WILKINSON *v.* NOTTINGHAM.

4-6537                                                157 S. W. 2d 201

Opinion delivered December 22, 1941.

*Ben E. Carter* and *Willis B. Smith,* for appellant.

*T. B. Vance,* for appellee.

GRIFFIN SMITH, C. J. A substituted and amended complaint in circuit court alleged that Mrs. R. E. Wilkinson was owner of the southeast fractional quarter of section fourteen (east of lake) in township eighteen south, range twenty-six west, containing 20.86 acres.

There is the further allegation that Crabtree's lake meanders in the southeast quarter of section fourteen; that the waters had receded, and that Mrs. Wilkinson owned to the bed center. In 1914 the heirs of Mildred A. Sentell conveyed to Mrs. Wilkinson. Appellant claims to have paid taxes on the land since she acquired it, having had possession from 1914 until dispossessed by appellees in 1937.

In 1931 Miller county tax assessment records showed "fractional part southeast fourteen-eighteen-twenty-six" to have been listed as unknown; and, although appellant, through agent, paid taxes on other property, and, as she says, thought she was paying on the tract of 20.86 acres, it was forfeited to the state. In July, 1936, W. L. and O. V. Howard purchased from the land office under a "fractional part" description. The Howards (August 31, 1936) conveyed to C. A. Nottingham, one of the appellees herein, the description being "east of lake, fractional part southeast quarter," etc.

April 27, 1938, on petition of W. L. Howard and Nottingham, the chancery court decreed partition of the bed of Crabtree's lake, the lands going to Howard and Nottingham. May 24, 1938, Howard conveyed to Nottingham ". . . all that portion of the fractional southeast quarter of section fourteen, township eighteen south, range twenty-six west, lying east of the center line of the lake" as established by the decretal order. Appellant was not a party to this proceeding and had no knowledge of it. Thereafter Nottingham ousted appellant's tenant.

Appellant alleged in her complaint that for forty years she and her predecessors occupied ". . . the southeast fractional quarter, east of lake, of section fourteen, . . ."

Nottingham's wrongful act in seizing possession was pleaded. Compensation for two years' rent at $500 per annum was asked. It was also shown that timber had been cut and sold by appellees, the amount and value of which was estimated.

An engineer's plat of the lands, showing the lake and certain surveys, was introduced without objection.

Testimony on behalf of Nottingham was to the effect that in 1928, A. J. Stewart conveyed to him the fractional southwest quarter of the southeast quarter of section fourteen, containing 39.03 acres, "with all accretions thereto." He immediately took possession of all lands "up to my house," claiming them. After obtaining deeds from the Howards he made improvements on the lands now claimed by appellant, cleared and made use of lands in the tract he says were not utilized by appellant, paid state and county taxes, and also paid to the receivers of McKinney Bayou Drainage District certain sums due for 1936, 1937, 1938, and 1939. Cash amounting to $29.70, and bonds of the district are recited in a receipt for $702.35. The payments related to 119.87 acres.

Nottingham insisted that appellant, without actual possession, could not show title superior to his because in the chain there appears a sheriff's deed to a "part" of the land, without other identifying words.

The court withdrew from the jury consideration of appellant's rights as reflected by muniments of title, but held there was no substantial evidence contradicting her testimony that the lands in question (other than 6.39 acres) had been held for a time sufficient to ripen into title by adverse possession, and that she had been wrongfully dispossessed by appellees. The jury, under proper instructions (but, as we think, without clear testimony upon which to predicate a finding) was required to determine the value of improvements placed on the property by Nottingham, and to find what credits appellant should have for rents and profits.

Taxes paid by appellees were also to be considered as elements of compensation.

The verdict amounted to an offset—$1,000 to appellant for rents and profits, and $1,000 to appellees for improvements, taxes, etc. Judgment was entered March 20, 1941, with directions that neither party take anything, but that appellant have a writ of possession. Motions for new trial were filed by each litigant, the court having, at the conclusion of testimony, treated Nottingham as the only interested defendant. Specifically, appellant's

motion went to the question of rents and profits, while Nottingham's motion questioned the court's action in withdrawing from the jury consideration of title. It also contained a prayer for judgment *non obstante veredicto.*

These motions, by consent of the parties, were passed until April 19. At that time appellant was overruled, but Nottingham was allowed $1,000 for his taxes and improvements.

Appellees contend that after April 19 appellant did not file her motion for a new trial; that the former motion was insufficient to carry into the record the court's alleged error in not giving judgment on the verdict, and that there is nothing to be considered on appeal except the court's action in withdrawing from the jury consideration of the right to possession.

We think the record shows that all parties treated the motions as properly before the court, and that no one was misled.

The rule announced in *Wilkins* v. *Maggard,* 190 Ark. 532, 79 S. W. 2d 1003, protects Nottingham. Appellant asks that the Wilkins case be distinguished, or that it be overruled. It is our view, however, that it correctly declares the law, and should not be impaired.

While we agree with the trial court that there was insufficient evidence—that is, no substantial evidence— to dispute appellant's claim to the lands other than those set aside to Nottingham in the judgment, we are of the further opinion that the jury did not consider rents and profits due appellant, and damages for timber; nor could there have been (as the circumstances clearly disclose) that careful determination of Nottingham's recoverable items which the law requires.

The nature of the verdict is in itself evidence that the jury "felt" neither party should recover from the other; but, since the court's instruction was that appellant and Nottingham were each entitled to have their claims considered, it was improper for the jury to increase appellant's claim to an amount sufficient to balance Nottingham's; or, on the other hand, to decrease

Nottingham's, or increase it, so that in result neither could recover.

Since the verdict, when viewed in the light of the evidence, clearly reflects disregard of evidence and instruction, the error can be cured only by remanding the cause with directions that the damages be determined.

The judgment awarding the land to appellant is affirmed; but in other respects it is reversed, with directions that a new trial be had.