James H. DEVAZIER and Debra Dawn DEVAZIER *v.* WHIT DAVIS LUMBER COMPANY and F & S CONSTRUCTION COMPANY

74-205                                    516 S.W. 2d 610

Opinion delivered December 9, 1974

*McMath, Leatherman & Woods,* by: *Phillip H. McMath* and *Mart Vehik,* for appellants.

*Smith, Williams, Friday, Eldredge & Clark,* by: *Overton S. Anderson* and *Joseph E. Kilpatrick,* for appellees and cross-appellants; *Laser, Sharp, Haley, Young & Boswell* and *Rice & Batton,* for appellees.

Frank Holt, Justice. Appellants James DeVazier and his thirteen year old daughter, Debra, brought this action to recover damages for personal injuries suffered by Debra as a result of a large stack of sheetrock falling upon her legs. The father sought "out of pocket" expenses and Debra sought damages for pain, suffering and permanent injury. The jury found each appellee and appellant Debra 25% responsible for the alleged injuries. The jury awarded Debra's father $3,200 for the expenses he had incurred and no damages to Debra. The trial court's denial of appellants' motion for a new trial "solely on the issue of damages sustained by her [Debra] as a result of the negligent injury which the jury has found that she has sustained by reasons of the" negligence of the appellees is the basis for this appeal.

The relief which appellants seek is not permissible. We have consistently refused to affirm a judgment on the issue of liability and allow a partial new trial or one limited only to the issue of damages. *Clark* v. *Ark. Democrat Co.,* 242 Ark. 497, 413 S.W.2d 629 (1967); *Manzo* v. *Boulet,* 220 Ark. 106, 246 S.W.2d 126 (1952); and *Krummen Motor Bus & Taxi Co.* v. *Mechanics' Lbr. Co.,* 175 Ark. 750, 300 S.W. 389 (1927). See also 58 Am. Jur. 2d, New Trial, § 27. The rationale is that a verdict, the foundation of the judgment at law, is an entity which cannot be divided by the trial court. Therefore, the trial court was correct in denying appellants' motion for a new trial.

Although we deem it unnecessary to discuss appellants' other contentions for reversal, suffice it to say we have examined them and find no merit.

By cross-appeal, F & S Construction Company asserts that the trial court erred in refusing its motion for a directed verdict on the basis that, as a matter of law, Debra was a licensee as to it. We cannot agree. Appellee William Carpenter, a real estate agent since 1967, sells houses. In doing so, he shows a prospective buyer building plans as well as houses which are being built by F & S Construction Company pursuant to a "turn-key" contract between Carpenter and F & S. Carpenter has keys to these pre-sold houses and does not have to secure permission from F & S to show them during construction. Carpenter was showing Debra's mother, a prospective purchaser, houses at her request. Debra was accompanying them. When they were inspecting one of the houses, which was under construction and pre-sold, a quantity of sheetrock stacked against a wall fell on Debra breaking a leg and ankle. It is F & S' contention that Debra was on the premises occupied by it merely as a sightseer for her own purposes and F & S Construction Company did not stand to benefit from her presence in the house.

Prosser, Law of Torts, § 61 (4th Ed. 1971), states:

> The leading case of *Indermaur* v. *Dames* laid down the rule that as to those who enter premises upon business which concerns the occupier, and upon this invitation express or implied, the latter is under affirmative duty to protect them, not only against dangers of which he knows, but also against those which with reasonable care he might discover.

In Restatement (Second) of Torts § 332 (1965), comment b at p. 176, invitation is defined as ".... conduct which justifies others in believing that the possessor desires them to enter the land. **** Any words or conduct of the possessor which lead or encourage the visitor to believe that his entry is desired may be sufficient for the invitation." In the case at bar, F & S allowed Carpenter to have keys to houses which were under construction by it by contract with him and it was his practice to show the houses to customers when requested. Certainly, it must be said the jury could infer that showing the houses to prospective purchasers, as here, resulted in a financial benefit to both Carpenter and F & S. See *Alfrey*

*Heading Co.* v. *Nichols,* 139 Ark. 462, 215 S.W. 712 (1919).

Cross-appellant F & S next asserts there was no substantial evidence of negligence by it. Therefore, the court erred in denying its motion for a directed verdict. In determining this issue on appeal, our well settled rule is we consider only that evidence and all reasonable inferences deducible therefrom which are most favorable to the appellee. *Baldwin* v. *Wingfield,* 191 Ark. 129, 85 S.W.2d 689 (1935); and *National Credit Corp.* v. *Ritchey,* 254 Ark. 139, 491 S.W.2d 811 (1973). In the case at bar 80 panels of sheetrock were delivered to the house five days before the accident occurred. One panel is 4' x 12' x ½" and weighs between 60 and 80 pounds. Approximately 18 of these were stacked vertically in the unfinished bedroom where Debra was injured. An employee and part owner of F & S testified that he had seen the sheetrock three or four times between the delivery date and five days later when the accident occurred. Appellants adduced evidence that the sheetrock was leaning against the wall at a very slight angle or "straight up." The safe method of storing sheetrock, appellant's expert witness testified, is to lay it horizontally on the floor. We hold there was substantial evidence, when viewed most favorably to the appellee, to support the jury's finding that F & S was negligent.

By cross-appeal, Whit Davis Lumber Company asserts for reversal that the trial court erred in refusing to grant its motion for a directed verdict. We agree with this contention. The lumber company, pursuant to an order by F & S, delivered the sheetrock to the house where the injury occurred. It was stacked in a vertical position as was their custom and practice. The sheetrock, as previously indicated, had been stacked in this position for about five days preceding the accident. During this time, a part owner of the construction company had observed and inspected it on three or four separate occasions. It appears that the sheetrock was delivered and stacked as ordered.

Restatement (Second) of Torts § 384 states the following rule:

One who on behalf of the possessor of land erects a

structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition *while the work is in his charge.* (Emphasis ours.)

Comment g of § 384 points out that liability does not attach for harm caused after control of the condition is terminated. In *S.W. Bell Co.* v. *Travelers Ind.,* 252 Ark. 400, 479 S.W.2d 232 (1972), we reiterated the general rule:

.... where there is a practical acceptance by a proprietor upon completion of its contractor's work thereupon the liability of the contractor as to third persons ceases and the responsibility 'for maintaining or using [it] in its defective condition [is] shifted to the proprietor.'

To the same effect is *Chesser* v. *King,* 244 Ark. 1211, 428 S.W.2d 633 (1968). In the circumstances we hold that F & S Construction Company, which ordered the sheetrock, was in complete possession and control of it at the time of the alleged injury inasmuch as there was, to say the least, a "practical acceptance" by the construction company. Therefore, any liability of the lumber company had ceased and had shifted to the construction company.

Affirmed on direct appeal. Affirmed on cross-appeal as to F & S Construction Company and reversed and dismissed on cross-appeal as to Whit Davis Lumber Company.

BYRD, J., not participating.