Michael HINKLE *v.* Lillie PERRY, Western Indemnity Company, Inc. and B.L.C. Insurance Co.

87-354                                                    752 S.W.2d 267

Supreme Court of Arkansas
Opinion delivered June 27, 1988

*Daggett, Van Dover, Donovan & Cahoon,* by: *Robert J. Donovan,* for appellant.

*Wilson, Bell & Neal,* for appellee Lillie Perry; *Rieves & Mayton,* by: *Elton A. Rieves IV,* for appellee and cross-appellant Western Indemnity Company, Inc.; and *Wright, Lindsey & Jennings,* for appellee Principal Casualty Insurance Company (formerly B.L.C. Ins. Co.).

STEELE HAYS, Justice. This is a damage suit arising from a motor vehicle collision between appellant Michael Hinkle and appellee Lillie Perry. Ms. Perry struck the rear of Hinkle's vehicle while he was stopped in traffic, and he sued her for personal injuries and property damage. Hinkle was driving a 1980 Oldsmobile titled in the name of "Michael's Auto Sales," Hinkle's business.

Ms. Perry was uninsured, so Hinkle joined as defendants, his own insurance carrier, Principal Casualty Insurance Company (formerly B.L.C. Insurance Company), appellee, and his parents' insurance carrier, Western Indemnity, also an appellee. Western had insured the Oldsmobile through a policy issued to Hinkle's parents.

The trial court granted summary judgment to Principal, finding that the Oldsmobile was not covered by Principal's policy. The case was tried to a jury which found for Hinkle and awarded $500 in damages for personal injuries, and $300 in property damage. On appeal, Hinkle raises three arguments for reversal and Western cross-appeals the denial of a directed verdict.

I

■ Hinkle first argues the trial court erred in failing to grant a new trial on the issue of damages because the amount of the verdict was clearly against the preponderance of the evidence. Hinkle contends the evidence showed that he had incurred $6,976 in medical expenses, yet the jury awarded only $500 for his personal injuries. On that basis Hinkle maintains he is entitled to a new trial limited to the amount of damages. ARCP Rule 59. We reject the argument. We have held a number of times that we will not affirm a judgment on the issue of liability and order a partial new trial on the issue of damages. In *DeVazier* v. *Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W.2d 610 (1974), we said:

> The relief which appellants seek is not permissible. We have consistently refused to affirm a judgment on the issue of liability and allow a partial new trial or one limited only to the issue of damages. *Clark* v. *Ark. Democrat Co.*, 242 Ark. 497, 413 S.W.2d 629 (1967); *Manzo* v. *Boulet*, 220 Ark. 106, 246 S.W.2d 126 (1952); and *Krummen Motor Bus & Taxi Co.* v. *Mechanics' Lbr. Co.*, 175 Ark. 750, 300 S.W. 389 (1927). See also 58 Am. Jr. 2d, New Trial, § 27. The rationale is that a verdict, the foundation of the judgment at law, is an entity which cannot be divided by the trial court. Therefore, the trial court was correct in denying appellants' motion for a new trial.

And see *Johnson* v. *Truck Ins. Exchange*, 285 Ark. 470, 688 S.W.2d 728 (1985).

II

■ Hinkle also contends the trial court erred in refusing to give that portion of AMI 2204 which allows a jury to consider transportation costs as part of the "reasonable expense of any necessary medical care, treatment and services rendered." (AMI 2204). Hinkle had seen three different doctors who were located some distance from his home. He testified to the number of visits he had with each one and to the approximate distances involved. Beyond that, there was no evidence of the cost of transportation. The trial court sustained an objection to the transportation expenses because the evidence was too speculative. We cannot say the proof was such that it was error to refuse to so instruct the

jury.

## III

As his last point, Hinkle argues the trial court erred in granting summary judgment to Principal Insurance Company, successor to B.L.C. Insurance Company. A policy had been issued to Hinkle by B.L.C. providing for uninsured motorist coverage, and Hinkle had joined the company as defendant in his suit. Principal was granted summary judgment on the grounds that the policy did not provide coverage for any damages arising from the use of the vehicle that was involved in this accident. Hinkle appeals from the order granting that judgment.

Principal's claim for denial of coverage was based on one section of the policy provision on uninsured motorists:

EXCLUSIONS:

A.   We do not provide coverage under this endorsement for bodily injury sustained by any person:

1.   While occupying, or when struck by, any motor vehicle *owned* by you or any relative which is not insured for this coverage under this policy.

(*Relative* is defined by the policy as "a person living in your home *and* related to you by blood, marriage or adoption. . .")[1]

Principal's motion for summary judgment contended that the car Hinkle was driving at the time of the accident was in fact owned by him, and had not been insured for coverage under his policy. Therefore, the exclusion clause precluded any recovery.

In a motion for summary judgment, the burden is initially on the movant to show he is entitled to the judgment and there is no issue of fact. Once he makes a prima facie showing of entitlement, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact. *Hughes Western World* v.

---

[1] Appellant's apparent theory for recovery was that if he did not own the car he was driving at the time of the accident, he would be covered by his policy.

*Westmoor Mfg.*, 269 Ark. 300, 601 S.W.2d 826 (1980).

Principal presented evidence in its motion to prove Hinkle had purchased the 1980 Oldsmobile in August 1985, that it was titled in the name of Michael's Auto Sales, and that the car was not insured under Hinkle's policy with Principal. It further showed through depositions, interrogatories and statements by Hinkle that in addition to being titled in the name of his business, he had possession of the title certificate.

Hinkle countered with an affidavit stating that he had purchased the vehicle for resale through Michael's Auto Sales; that his parents had contacted him about purchasing the automobile and had taken possession of it; that on the day of the accident Hinkle had exchanged vehicles with his parents so that they could move an article in his truck; that the trade was for a day only, and on that particular day the accident occurred. Hinkle also stated his parents had purchased insurance to cover the 1980 Oldsmobile.

■■  While possession of personal property is prima facie evidence of ownership, *Velder* v. *Crown Exploration Co.*, 10 Ark. App. 273, 663 S.W.2d 206 (1984), it is only prima facie evidence of title and must yield to actual title. *Forrest* v. *Benson*, 150 Ark. 89, 233 S.W. 916 (1921). Hinkle's proof for summary judgment established only bare possession with the possible intent to buy, which bestowed upon the parents no status beyond that of bailees. See 8 Am. Jur. 2d *Bailment* § 40. As against one with title, then, ownership rests with the holder of the actual title. With no greater evidence than Hinkle produced, the trial court was correct to find the appellant owned the automobile in question and therefore recovery was excluded under his policy.

■  Hinkle's reliance on his parents' purchase of insurance is misplaced. Their purchase of insurance on the vehicle does not change the result, as an insurable interest is not dependent on ownership (see 7 Am. Jur. 2d Automobile Insurance § 42). The fact that one has an insurable interest is not probative of ownership but only goes to proof that the interest is among those considered insurable as opposed to those which are not. The question here would have been what the nature of the insurable interest was, and Hinkle's evidence showed only that his parents were bailees.

## IV

Western Indemnity Company raises one issue on its cross-appeal. Michael Hinkle's parents had taken possession of the 1980 Oldsmobile he had purchased for his auto sales business with the idea they would drive it and then decide if they wanted to buy it. It was under these circumstances that the Hinkles purchased insurance for the vehicle from Western Indemnity.

Michael Hinkle joined Western as a defendant in his suit, claiming coverage under the policy Western had issued to his parents. Western moved for a directed verdict on the grounds that the Hinkles did not have an insurable interest in the vehicle. The motion was denied, and Western cross-appeals.

Citing our statute on insurable interests, Ark. Code Ann. § 23-79-104 (1987) [Ark. Stat. Ann. § 66-3205 (Repl. 1980)] Western argues that the Hinkles did not have "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance," initially, or "at the time of loss."[2] Western contends that while the parents had possession, the title remained with Michael Hinkle, that no money was ever exchanged for the car, and no contract was ever entered into for purchase of the car. Western further maintains that even if the parents were found to be bailees, that relationship was terminated when the parents "re-delivered" the car to Michael on the day of the accident, and there was no insurable interest "at the time of the loss."

We stated in *Sullivant* v. *Pennsylvania Fire Ins. Co.*, 223 Ark. 721, 268 S.W.2d 372 (1954), that "[a bailment] may be comprehensively defined as a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case

---

[2] We note that even though Western issued the policy and the Hinkles told the agent they were planning to buy the car, and did not state they owned it, the doctrines of waiver and estoppel do not apply. We have specifically held that in view of the strong public policy against enforcing insurance contracts in which there is no insurable interest involved, those doctrines are completely inapplicable to create coverage which otherwise does not exist. *Farm Bureau Mutual Insurance* v. *Glover*, 2 Ark. App. 79, 616 S.W.2d 755 (1981).

may be." Such a contract of bailment may be implied from the circumstances of a transaction or from the words and acts of the parties evincing a purpose to enter into that relation toward the property, as well as by an actual agreement. 8 Am. Jur. 2d *Bailment* § 63.

An arrangement whereby the property is delivered to a party for the purpose of ascertaining whether the property is suitable for purchase, is a typical bailment. *Id.*, §§ 40, 44. The arrangement is not a gratuitous bailment, but one that is for the mutual benefit of the parties. *Id.*, § 26. A bailment for mutual benefit of the parties requires the bailee to exercise ordinary care. *Warren* v. *Geater*, 206 Ark. 518, 176 S.W.2d 242 (1943).

There is no doubt that the Hinkles were bailees in this case. They took possession of the car with the understanding they were going to try it and purchase it if it proved satisfactory. The Hinkles had the car for some period of time and had put about 1000 miles on it at the time of the accident. Furthermore "[i]t is universally recognized that a bailee in possession of property has an insurable interest in the goods in his possession and may insure them for their full value." 8 Am. Jur. 2d *Bailment* § 137. *See* also, *Couch on Insurance*, § 24:22; *Farmers Butter & Dairy Coop* v. *Farm Bureau Mutual Ins. Co.*, 196 N.W.2d 533 (Iowa 1972) (plaintiff was a bailee with insurable interest while in possession of a truck for a trial period with option to purchase); *Bird* v. *Central Mfgs. Mutual Insurance Co.*, 120 P.2d 753 (Or. 1942) (plaintiff was bailee with insurable interest while borrowing a car for a trip). We have no difficulty holding that Michael Hinkle's parents were bailees and had an insurable interest in the vehicle in question.

Western contends, however, that even if the Hinkles had an insurable interest as bailees, that status was terminated at the time of the accident by virtue of the "re-delivery" of the property. Redelivery is only one of the ways a bailment may be terminated, and the fact that a bailor shares with the bailee the use and enjoyment of the subject of the bailment, does not necessarily mean the bailment has terminated. It depends on the circumstances of the case whether use of the property by the bailor will be considered a termination of the bailment, and if the facts are in dispute, it is for the jury to determine. *Id.* 8 Am. Jur.

2d *Bailment* § 292.

Here, the only evidence on this point was that the parents were in continuous possession of this vehicle and that Hinkle had borrowed the car for only a day. The parents contend they were planning to buy the vehicle, and would have, had it not been for the accident. There was evidence from which the jury could find that the bailment had not terminated by redelivery of the car and at the time of the accident, the Hinkles still had an insurable interest in the vehicle.

AFFIRMED.

HICKMAN, J., and DUDLEY, J., concur.

NEWBERN, J., concurs in the result, but would affirm pursuant to Rule 9.

ROBERT H. DUDLEY, Justice, concurring. I concur in the affirmance of the trial court, but I do so on the first two points of appeal because of the appellant's flagrant violation of Rule 9(d) of the Rules of the Supreme Court and the Court of Appeals. I agree with the reasoning expressed by the majority on the third point.

Point one of the appellant's argument is: "The trial court erred in failing to grant a new trial on the issue of damages." Yet, in his abstract, appellant makes no reference to a motion for a new trial being filed with, being presented to, or being ruled upon by the trial court.

Point two is: "The trial court erred by deleting that portion of A.M.I. 2204 instructing the jury that Mr. Hinkle [appellant] may be entitled to recover transportation expenses incurred in securing medical care." Even so, the appellant failed to abstract any part of the proffered instruction.

The appellant has tacitly admitted that his brief was flagrantly deficient on the first two points of appeal. In his reply brief, he wrote:

> Due to error, the appellant's attorney failed to abstract the motion for new trial, the trial court's order ruling on the motion for a new trial, a disputed instruction and three questions on voir dire.

When this defect was raised, the appellant voluntarily republished his abstract and brief and filed a motion with the court asking permission to file the republished abstract and brief. Since the appellees responded to all of the points raised on the merits, no prejudice nor delay will result if appellant's republished brief and abstract is considered on Point One and Two.

Because the appellant's brief is flagrantly deficient on the first two points of appeal, I would affirm those two points on the basis of Rule 9(d) of the Rules of the Supreme Court and Court of Appeals, and I would not reach the merits of those two points.

HICKMAN and NEWBERN, JJ., join in this concurrence.