Richard SMITH *v.* WALT BENNETT FORD, INC.

93-185                                           864 S.W.2d 817

Supreme Court of Arkansas
Opinion delivered November 1, 1993
[Rehearing denied December 6, 1993.]

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, for appellant.

*Hartsfield, Almand & Grisham*, by: *William G. Almand*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Richard Smith, appeals a judgment of the Pulaski Circuit Court awarding him damages of $19,195.31. He filed a complaint against appellee, Walt Bennett Ford, Incorporated (WBF), and against separate defendants Ford Motor Credit Company and Junior C. Landis for odometer fraud pursuant to Subchapter IV of the Motor Vehicle Information and Savings Act, 15 U.S.C. §§ 1981-1991 (1988 & Supp. IV 1992) (hereinafter "Federal Odometer Fraud Act" or "the Act") and for common law fraud or misrepresentation. The jury returned a verdict in Smith's favor against WBF and Landis. Smith asserts five points of error for reversal of the judgment. WBF cross-appeals, asserting five additional points for reversal. Landis and Ford Motor Credit are not parties to this appeal. As this case involves a question in the law of torts, jurisdiction in this court is pursuant to Ark. Sup. Ct. R. 1-2(a)(16).

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Smith alleges that sometime during December 1986 and January 1987, Landis voluntarily returned to Ford Motor Credit fifteen dump trucks on which he was in default. Landis had purchased all fifteen trucks from WBF several years earlier. Ford Motor Credit assigned the fifteen trucks to WBF. WBF was able to re-sell all fifteen dump trucks previously owned by Landis. Smith purchased one of the fifteen trucks from WBF; that truck, Vehicle Identification No. 1FDYU80U0FVA11368, is the subject of this litigation.

From evidence presented at trial, the jury could have concluded the following. On July 9, 1987, Smith purchased a 1985 Ford dump truck, Model No. LT8000 with a Caterpillar engine, from WBF who certified the mileage on the truck to be

45,974. WBF received the truck from Ford Motor Credit, who certified the mileage to be 45,890 on January 9, 1987. On August 4, 1988, with the truck's odometer reading 84,242 miles, Smith's truck began to overheat so he took it to J.A. Riggs Tractor Company, an authorized warranty repair center for Caterpillar. The service personnel at J.A. Riggs Tractor Company determined the truck had a faulty head gasket and that the truck's warranty had expired, but that the necessary repairs could possibly be covered under a service program. The service manager checked his computer for the history of warranty and service program work done on Smith's truck. The computer revealed that Smith's truck had previously been repaired under the same service program in November 1986 with 84,272 miles on the truck.

Based on the information he obtained from the J.A. Riggs Tractor Company, Smith concluded his truck's odometer had been tampered with and immediately returned his truck to WBF. Smith left his truck at WBF's service department for repairs. A dispute arose over who should pay for how much of the repairs and on the next day, August 5, 1988, Smith demanded the return of his down payment and all payments he made under the purchase contract. WBF retained possession of the truck and later re-sold it. Smith eventually filed this lawsuit.

Smith's complaint alleged two causes of action against all three defendants. Count I alleges specific violations of 15 U.S.C. § 1984 for changing the odometer and 15 U.S.C. § 1988 for failing to disclose the actual mileage of the truck. Under Count I, Smith alleged damages of $17,860.31 down payment and installment payments; $2,294.33 repair parts and labor; $4,229.00 loss of income; and treble damages and attorneys fees pursuant to 15 U.S.C. § 1989. As an alternative to the foregoing damages, Smith asks for rescission of the sales contract and refund of his down payment and installment payments, plus the statutory penalty of $1,500.00, treble damages, and attorneys fees pursuant to 15 U.S.C. § 1989. Count II alleges an alternative claim for common law misrepresentation. Under Count II, Smith alleged damages of $17,860.31 down payment and installment payments; $2,294.33 repair parts and labor; $4,229.00 loss of income; prejudgment interests and costs; and all other appropriate relief. As an alternative to the foregoing damages, Smith

requested rescission of the sales contract and refund of his down payment and installment payments, plus prejudgment interest, costs, and other appropriate relief. Smith filed an amended complaint adding a request for punitive damages.

Prior to trial, Smith was required to elect between proceeding under the Federal Odometer Fraud Act or under the state common law of fraud. Arguing that he should not be forced to elect his remedy until the jury was instructed, he chose to proceed under the federal statute. The jury was instructed, without objection, as follows:

> If you decide for the plaintiff, Richard Smith, on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following three elements of damage sustained: First, any sums paid in connection with the purchase of the vehicle in question; Second, the cost of any necessary repairs; and third, the value of any profits lost. Now, whether any of these elements of damage have been proved by the evidence is for you to determine.

The jury returned with a verdict and answers to interrogatories finding Ford Motor Credit not liable and both WBF and Landis liable for damages to Smith in the amount of $19,195.31. The jury apportioned liability between WBF and Landis at 65% and 35% respectively. The trial court subsequently entered judgment awarding Smith the following damages in addition to the jury's award: $1,500.00 in actual damages pursuant to 15 U.S.C. § 1989(a)(1); prejudgment interest on actual damages of $3,060.96; and $15,000.00 in attorneys fees and $259.12 in court costs pursuant to 15 U.S.C. § 1989(a)(2). Smith appeals and WBF cross-appeals, each asserting five points of error.

On direct appeal, Smith makes the following assignments of error: (1) the trial court violated 15 U.S.C. § 1989(a)(1) by failing to treble the damages awarded by the jury; (2) the failure to admit evidence of similar fraudulent transactions by WBF; (3) the failure to allow evidence of lost profits; (4) the requirement that Smith elect his remedies; and (5) the granting of WBF's motion in limine on the day before trial. We have reviewed all five assertions of error and conclude only one has merit — the issue of lost profits. Therefore, we reverse on direct appeal.

On cross-appeal, WBF makes the following assignments of error: (1) the denial of WBF's motion for directed verdict based on agency regulations exempting heavy vehicles from the Federal Odometer Fraud Act; (2) the denial of WBF's motion for directed verdict based on insufficient evidence that the odometer was altered while the truck was in WBF's exclusive dominion and control; (3) the denial of WBF's motion for directed verdict based on insufficient evidence of WBF's intent to defraud when disclosing the odometer reading; (4) the admission into evidence of two groups of hearsay documents, a computer printout from J.A. Riggs Tractor Company and registration certificates from the Department of Finance and Administration; and (5) the award to Smith of both restitutionary damages and federal statutory damages. We have reviewed all five assertions of error and conclude only the fifth one has merit. Therefore, we reverse on cross-appeal.

As the two reversible errors concern only damages and not liability, we depart from our practice of addressing the points of error in the order raised by the parties and address the points on damages separately from the other points. This is done in an attempt to make it easier on the reader of this opinion as well as to provide better direction on remand.

## II. DAMAGES ISSUES

We have before us the three points of error raised on direct appeal that concern damages — the trebling of the jury's award, the election of remedies, and the exclusion of evidence of lost profits. Also before us is the single point on cross-appeal concerning damages — the recovery of both a restitutionary award and statutory damages. We find reversible error occurred as to the lost profits and as to the double recovery of both a restitutionary award and damages and therefore reverse on those points. The remaining points on damages are closely related and we address them together to the extent they will arise on remand.

The basic issue common to all the damages questions is the meaning of "actual damages" in 15 U.S.C. § 1989(a). The resolution of that basic issue determines the resolution of the remaining damages issues. Therefore, we consider that basic question first.

## A. THE MEANING OF "ACTUAL DAMAGES"

The particular section of the Federal Odometer Fraud Act at issue is 15 U.S.C. § 1989, which provides in part that:

(a) Amount of damages

Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

■ There is no statutory definition of "actual damages" as used in section 1989. However, the landmark case interpreting that term has stated that:

"Although 'actual damages' is not defined in the statute, it seems reasonable to give it *the meaning commonly applied to fraud cases*. This is the difference between the amount paid by the plaintiffs—not the value of the car if it had been as represented--and the fair market retail value of a vehicle of the type purchased with the number of miles actually traveled by the car, *plus such outlays as are legitimately attributable to the acts of the defendants*."

*Duval* v. *Midwest Auto City, Inc.*, 425 F. Supp. 1381 (D. Neb. 1977) (emphasis added), *aff'd*, 578 F.2d 721 (8th Cir. 1978).

■ The task before us then is to point out those damages that are "commonly awarded for fraud." *See Duval*, 425 F. Supp. 1381. This court has recognized the elements of both tort and contract that constitute an action for common law fraud and has accordingly applied two measures of damages, both of which are characterized as affirmance remedies because they are awarded when the contract is affirmed. The benefit of the bargain measure is the difference in value of the property as represented and the property's actual value at the time of the purchase. The out-of-pocket measure is the difference between the price paid for the property and the property's actual value when received.

■■ As an alternative to affirmance remedies, this court has allowed a defrauded party the remedy of restitution. This alternative remedy brings in the doctrine of election of remedies. Restitution is characterized as a disaffirmance remedy because it is awarded when the contract is revoked, rescinded, or disaffirmed. However, restitution differs from the two types of affirmance remedies just discussed. "Damages" refers to a money award compensating a plaintiff for losses. Dan B. Dobbs, *Law of Remedies,* § 1.1 (2d ed. 1993). Although an award of restitution may in fact provide compensation for the plaintiff in some cases, "[t]he restitutionary goal is to prevent unjust enrichment of the defendant by making him give up what he wrongfully obtained from the plaintiff." *Id.* Restitution is thus measured by the defendant's gain, not by the plaintiff's loss. *Id.*

In the traditional view, the affirmance remedies are regarded as inconsistent with the disaffirmance remedies. However, Professor Dobbs has observed that "Contemporary thinking seems to be departing from the old conceptual thinking involved in election doctrine. With the contemporary concern chiefly to avoid duplicated remedies, some courts have flatly said that restitution and punitive damages should be permitted." Dan B. Dobbs, *Law of Remedies*, § 9.4 (2d ed. 1993). Among the cases cited for that statement is *Thomas Auto Co. v. Craft*, 297 Ark. 492, 763 S.W.2d 651 (1989).

The *Thomas Auto Co.* case dealt with fraud in the sale of a car. This court followed the contemporary view and held that the plaintiffs were entitled to receive both a restitutionary award (return of the purchase price) and incidental and consequential damages. In so holding, this court made it clear, however, that it would be double recovery to allow a plaintiff to receive damages calculated on the basis of both the benefit of the bargain and restitution. In addition, *Thomas Auto Co.* allowed for recovery of punitive damages on condition that there be a showing of all the elements of the tort of deceit. That, of course, would not duplicate either compensatory damages or restitution.

■■ We conclude that a defrauded party may recover either affirmance damages or disaffirmance damages, but is prohibited from recovering both. *Thomas Auto Co. v. Craft*, 297 Ark. 492, 763 S.W.2d 651 (1989). Obviously, when determining

which type of damages is appropriate, it is helpful to determine who has possession of the property. Generally, if the buyer has possession, affirmance remedies are appropriate; if the seller has possession, disaffirmance remedies are appropriate. *See* Howard W. Brill, *Arkansas Law of Damages* § 35-7 (2d ed. 1990) (and cases cited therein). We also conclude that, in addition to either affirmance or disaffirmance remedies, a defrauded party may recover consequential damages and punitive damages, depending on the facts of each case. *Id.*; *Thomas Auto Co.*, 297 Ark. 492, 763 S.W.2d 651.

Our conclusions are consistent with those of other courts interpreting the Act. For example, one court has stated that although the *Duval* measure of damages is the favored approach, when the market value of the car is unavailable (e.g., when the odometer is non-functional and the actual mileage cannot be determined) then the appropriate remedy is to award the $1,500.00 statutory minimum damages. *Williams* v. *Toyota of Jefferson, Inc.*, 655 F. Supp. 1081 (E.D. La. 1987). Yet another court has stated that when there is no evidence of market value, the case is appropriate for rescission. *Jones* v. *Fenton Ford, Inc.*, 427 F. Supp. 1328 (D. Conn. 1977). The *Fenton Ford* court reasoned that when the mileage is unknown, it is unreasonable to make the plaintiff keep the car and take the difference in value as damages; it is more equitable to allow the defendant to keep the car and give the plaintiff his payments back. The *Fenton Ford* court awarded restitution, but did not treble it; instead, it awarded the statutory minimum $1,500.00 because the consequential damages remaining after the restitution award was excluded were less than the $1,500.00 minimum. The *Fenton Ford* court also allowed attorneys fees under the Act.

We continue with our analyses of the damages issues and apply the foregoing measures of damages that we have determined are "commonly awarded for fraud."

### B. LOST PROFITS — DIRECT APPEAL

We conclude that reversible error occurred on the issue of lost profits. On the day before trial, WBF moved in limine to exclude, among other things, any reference to Smith's lost income or lost profits. WBF made two arguments in support of its motion. First, WBF argued that Smith was proceeding under the Federal

Odometer Fraud Act which allows recovery of "actual damages sustained" and that "actual damages" does not include lost profits. Second, WBF argued Smith's proof of lost profits was too speculative and based on conjectural evidence. At a hearing on the motion in limine, the trial court relied on *Fenton Ford*, 427 F. Supp. 1328 (footnote 8), and ruled that the lost profits in this case were similar to the lost wages at issue in *Fenton Ford*. The *Fenton Ford* court held the lost profits were "too remote to be recoverable under the [Federal Odometer Fraud] Act." *Fenton Ford*, 427 F. Supp. at 1332.

For reversal, Smith argues the trial court erred in holding *Fenton Ford* precludes recovery of lost profits under the Act as a matter of law. Smith reasons that lost profits are part of the "actual damages" contemplated by the Act. We agree with Smith's contention and reasoning.

From our review of *Fenton Ford*, we conclude its holding on lost profits as stated in footnote 8 was limited to that particular case and that the facts of the current case are distinguishable. Moreover, we conclude that lost profits are recoverable under the Act, provided they are proved to be the proximate result of the fraud and in a reasonably certain amount.

In *Fenton Ford*, the issue was lost wages, not lost profits. The only evidence of lost wages was the plaintiff's testimony. She stated that she was forced to quit her part-time job because she could not get there due to the lost use of her vehicle. In the current case, Smith did not have a job if he did not have use of his truck; it would make no difference if Smith found another means of transportation to his job site — he would still not have a dump truck with which to work. In short, Smith's vehicle was his job, not merely a means of transportation to and from work. In addition, had the trial court not excluded it, there could have been testimony of Smith's lost profits from witnesses other than Smith.

■    Under Arkansas law, lost profits are recoverable in an action for fraud, *see Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985), provided, of course, they are proved to be proximately caused by the fraud and in a reasonably certain amount. This is consistent with our previous analysis that consequential damages are recoverable under the Act. Consequential damages are defined as "[s]uch damage, loss or injury as

does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." *First Service Corp.* v. *Schumacher*, 16 Ark. App. 282, 702 S.W.2d 412 (1985), (citing *Black's Law Dictionary*, 5th ed., and *Richmond Redevelopment and Housing Auth.* v. *Laburnum Constr. Corp.*, 80 S.E.2d 574 (Va. 1954)). Lost profits are well recognized as a type of consequential damages. *Tremco, Inc.* v. *Valley Aluminum Prod. Corp.*, 38 Ark. App. 143, 831 S.W.2d 156 (1992); *AM/PM Franchise Ass'n* v. *Atlantic Richfield Co.*, 584 A.2d 915 (Pa. 1990); *John D. Hollingsworth on Wheels* v. *Arkon Corp.*, 305 S.E.2d 71 (S.C. 1983). Thus, we reach our conclusion that lost profits are recoverable under the Act as "actual damages" provided they are proved to the requisite levels of certainty and causation. We read *Fenton Ford* as holding simply that the proof in that case did not rise to the requisite levels.

WBF attached as exhibits to its brief in support of the motion in limine excerpts from the discovery depositions of two of Smith's potential witnesses, Jimmy Carter, Smith's former employer, and Dr. Charles Venus, an economist. Smith was working for Carter when the head gasket broke and he relinquished possession of the truck to WBF. In his deposition, Carter stated that Smith could have had a job working for him for the next six months (the six months after Smith relinquished his truck to WBF on August 4, 1988), making $35.00 per hour, ten hours per day, six days a week. Dr. Venus, stated he made two sets of calculations based on a 50% gross profit margin and a 75% gross profit margin, both of which he thought were reasonable based on his knowledge of studying other companies. His calculations were based on the figures in Carter's testimony. All of Dr. Venus' deposition is not in the transcript, thus his final calculations are unknown. However, if the jury were allowed to hear the foregoing testimonies they could have reasonably concluded that Smith lost profits of approximately $27,300.00 (50% profit margin) or $40,950.00 (75% profit margin).

This court has stated that proof of lost profits must be sufficient to remove the question of profits from the realm of speculation and conjecture; the evidence must establish the alleged anticipated profits with reasonable certainty, and the jury must be provided a reasonably complete set of figures from which

to determine the amount of profits lost. *See e.g., Robertson* v. *Ceola*, 255 Ark. 703, 501 S.W.2d 764 (1973). We conclude the foregoing evidence meets the requisite level of certainty.

Having concluded that a reasonably certain amount of lost profits could have been established, the issue now becomes whether there was evidence from which the jury could have determined the loss of profits to be the proximate result of the fraud. The jury found WBF liable for either actually rolling back the odometer or for failing to disclose the truck's actual mileage; either of those actions is therefore the fraud in this case.

██ Smith testified he questioned the low mileage figure and the heavy truck sales manager at WBF assured him the truck had low mileage but had simply been abused from heavy hauling at a construction site. Smith stated he would not have purchased the truck at all if the mileage was unknown because of his prior experience with a higher mileage International truck. In addition, there was evidence the truck broke down while Smith was on the job and that the truck had previously been repaired for the very same problem. We conclude this evidence was at the very least sufficient to create a jury question as to the proximate result of the fraud.

Therefore, we hold the trial court erred in granting WBF's motion in limine to exclude Smith's proof of lost profits. Accordingly, we reverse the judgment on direct appeal.

## C. DOUBLE RECOVERY — CROSS-APPEAL

For reversal of the judgment, WBF contends the trial court erred in entering a judgment that awards both restitutionary damages and statutory damages under the Act. WBF claims Smith elected his remedy of proceeding under the Federal Odometer Fraud Act and should therefore be limited to the "actual damages" permitted under the Act. WBF asserts the Act's "actual damages" are limited to difference-in-value damages (affirmance damages) and do not include restitutionary damages (disaffirmance damages) as awarded in the judgment. WBF further asserts that the award of both restitutionary damages and the statutory minimum $1,500.00 amounts to a double recovery in violation of *Thomas Auto Co.*, 297 Ark. 492, 763 S.W.2d 651.

Smith responds with the argument that he only received disaffirmance damages ($17,860.31 return of payments), and the remaining $1,335.00 of the $19,195.31 verdict could be characterized as consequential damages for repairs. Since one can have disaffirmance damages and consequential damages under both *Thomas Auto Co.*, 297 Ark. 492, 763 S.W.2d 651, and Ark. Code Ann. § 4-2-711 (Repl. 1991), Smith contends the judgment was not in error.

We agree with Smith's assertion that one can recover disaffirmance damages, consequential damages, and punitive damages. However, we cannot affirm the judgment on this basis because it is impossible for us to tell, without speculation, what the $1,500.00 awarded to Smith represents, be it affirmance damages, consequential damages, punitive damages, or the statutory minimum damages under the trebling policy of the Act.

It is impossible to tell from the verdict itself, or any of the interrogatories, how the jury arrived at the figure of $19,195.31. However, from the evidence presented, the jury could have awarded $17,860.31 as payments Smith made on the truck. There was also evidence presented that would have allowed the jury to characterize the remaining $1,335.00 as either repair damages or past lost profits. Both repair damages and past lost profits are consequential damages. However, the record indicates that the trial court considered the consequential damages in this case to be less than $1,500.00, and that it awarded the $1,500.00 on that basis. This was error, because if indeed the remaining $1,335.00 of the jury's award represented consequential damages, then when the $1,335.00 is trebled the sum is greater than the $1,500.00 minimum and therefore the $1,335.00 should have been trebled as "actual damages" under 15 U.S.C. § 1989(a)(1). If however, the $1,335.00 does not represent consequential damages, then the trial court still erred in awarding the $1,500.00 because, in that situation, the $1,500.00 could only represent affirmance damages which when combined with the $17,860.31 in disaffirmance damages, would amount to a prohibited double recovery of both affirmance and disaffirmance damages. *Thomas Auto Co.*, 297 Ark. 492, 763 S.W.2d 651.

We agree with WBF's contention that Smith elected a remedy in this case. We disagree with WBF, however, as to the

particular remedy Smith elected. Smith elected the disaffirmance remedy of restitution when he returned the truck to WBF and WBF accepted it. Thus, the disaffirmance remedy of restitution, not affirmance damages, is the appropriate remedy to be granted here. However, just because a disaffirmance remedy is appropriate, does not mean Smith is prevented from recovering consequential damages and punitive damages. *Thomas Auto Co.*, 297 Ark. 492, 763 S.W.2d 651.

For the reasons stated in the foregoing, we reverse the judgment on cross-appeal.

### III. DIRECTIONS ON REMAND

Having concluded that error occurred on both direct and cross-appeal as discussed in the foregoing damages issues, we reverse and remand for a new trial. Upon remand, Smith should be allowed to present evidence of his profits lost as a result of the high mileage. In addition, to prevent a claim on appeal of double recovery, all components of any amounts awarded should be identified to the extent possible. Although the only errors we find on appeal pertain to the damages issues, we do not divide the jury's verdict and remand for a partial new trial on damages. The new trial will include both damages and liability issues.

In at least two cases, we have reversed and remanded for a partial new trial on damages. *See e.g., Arkansas State Highway Comm'n* v. *Cook*, 233 Ark. 534, 345 S.W.2d 632 (1961); *Wilkinson* v. *Nottingham*, 203 Ark. 270, 157 S.W.2d 201 (1941). These cases are deviations from our long standing rule that we will not affirm a judgment on the issue of liability and remand for a partial new trial on the issue of damages. *See e.g., Hinkle* v. *Perry*, 296 Ark. 114, 752 S.W.2d 267 (1988); *DeVazier* v. *Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W.2d 610 (1974); *Clark* v. *Arkansas Democrat Co.*, 242 Ark. 497, 413 S.W.2d 629 (1967) (supplemental opinion on denial of rehearing); *Manzo* v. *Boulet*, 220 Ark. 106, 246 S.W.2d 126 (1952); *Krummen Motor Bus & Taxi Co.* v. *Mechanics' Lbr. Co.*, 175 Ark. 750, 300 S.W.2d 389 (1927). Our rationale for this longstanding rule is that a verdict is the foundation of the judgment at law and cannot be divided by the court. *DeVazier*, 257 Ark. 371, 516 S.W.2d 610. In addition, this court has reasoned that the possibility of a compromise in the jury room links the two issues of damages and liability in-

separably together. *Rector* v. *State*, 280 Ark. 385, 659 S.W.2d 168 (1983).

We have obviously held to this rule in spite of the language of ARCP Rule 59 suggesting that a trial court may grant a new trial on "all or part of the issues." We hold to this rule today and reverse and remand for a new trial on the issues of both liability and damages. This is the better course and we do not revert to our prior holdings remanding for a partial new trial.

As it is possible that all the remaining issues raised on direct appeal and cross-appeal will arise on remand, we address those issues.

## A. DAMAGES ISSUES
### 1. Trebling of Jury Award — Direct Appeal

Smith's first argument on direct appeal is that the trial court erred in refusing to treble the $19,195.31 in damages awarded by the jury. This argument has no merit. Smith relies on 15 U.S.C. § 1989, and contends that the $19,195.31 awarded by the jury are "actual damages" and therefore should have been trebled by the trial court.

In the present case, the trial court followed *Fenton Ford*, 427 F. Supp. 1328. The Federal Odometer Fraud Act was applied; although it is impossible to tell from the verdict itself, the trial court interpreted the $19,195.31 verdict as including $17,860.31 in Smith's payments and characterized such as restitution of the payments made; the restitution was given but not trebled; the statutory minimum $1,500.00 was also given, without clear explanation as to why; and attorneys fees and costs were awarded. WBF, the transferor, was allowed to keep the vehicle.

The problem with Smith's argument is that it is contrary to the legislative intent behind the Federal Odometer Fraud Act. Congress passed the Act to provide a national policy against odometer tampering. Motor Vehicle Information and Cost Savings Act, Pub. L. No. 92-513, 1972 U.S.C.C.A.N. 3960. There is no doubt that the purpose of 15 U.S.C. § 1989 is to punish odometer tamperers by imposing civil penalties upon them and to reward the purchaser who discovers such tampering. *Delay*, 373 F. Supp. 791. The purposes of punishment and reward are necessary because, ordinarily, the amount of damages

awarded for the fraud in such a case would be relatively small. Thus, while we have concluded that the Act does not preclude recovery based on a *contract* disaffirmance theory, we do not interpret the legislative intent behind the Act to include a trebling of an award based on such a theory. Rather, we think the intent was to provide for trebling of damages awarded for the *fraud* of odometer tampering.

■■ Most likely the jury's award of $19,195.31 included some form of contract disaffirmance damages. Thus, it was not error for the trial court to refuse Smith's request to treble that portion of verdict.

### 2. Election of Remedies — Direct Appeal

Smith argues the trial court erred in forcing him to elect between causes of action under the Federal Odometer Fraud Act and under Arkansas common law for fraud. He claims that a plaintiff should not be forced to elect between *causes of action*, only between inconsistent *remedies*. WBF ignores the distinction between causes of action and remedies and argues simply that a plaintiff should not be allowed to make a recovery of both disaffirmance remedies and affirmance remedies.

We observe that at least one court has held the Federal Odometer Fraud Act does not preempt state causes of action for common law fraud based upon odometer tampering or misrepresentation. *Verdonck v. Scopes*, 590 N.E.2d 545 (Ill. App. Ct. 1992). The Act specifically provides that it does not preempt causes of action asserted under state odometer fraud statutes. 15 U.S.C. § 1991.

■■■■ The doctrine of election of remedies applies to remedies, not to causes of action. *Westark Specialties, Inc.* v. *Stouffer Family Ltd. Partnership*, 310 Ark. 225, 836 S.W.2d 354 (1992). Contract and tort theories have been determined to be consistent when both seek the same relief and the evidence to support recovery on one theory partially supports it on another. *Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985). However, the fact that claims based on both contract and tort theories have been regarded as consistent causes of action, does not mean that recoveries on both theories are allowed. To the contrary, this court has stated that "[u]nder no circumstances

would we permit, over proper objection, both recoveries." *Thomas Auto Co.*, 297 Ark. at 498, 763 S.W.2d at 654.

But for Smith's conduct in returning the truck to WBF, we would conclude the trial court erred in forcing Smith to choose between causes of action. However, Smith already elected his remedy by returning the truck to WBF. Absent the return of the truck to WBF, Smith should have been allowed to pursue both causes of action and present evidence of both. Then, he could have either chosen to have the jury instructed on only one remedy or he could have had the jury instructed on both remedies, with an additional instruction telling the jury to choose only one. *See Thomas Auto Co.*, 297 Ark. 499, 762 S.W.2d 651; Howard W. Brill, *Arkansas Law of Damages* § 2-6, at 24 (2d ed. 1990).

Because Smith elected his remedy when he returned his truck to WBF and WBF accepted it, the jury's award of restitution was proper. Any error committed by forcing Smith to elect between causes of action is therefore harmless.

## B. ISSUES OTHER THAN DAMAGES — DIRECT APPEAL
### 1. Evidence of Similar Fraudulent Acts

Smith asserts the trial court abused its discretion in excluding evidence that fourteen other dump trucks also had their odometers altered. These fourteen trucks, like Smith's truck, were previously owned by Landis, repossessed by Ford Motor Credit and assigned to WBF. Smith contends this evidence was admissible for the limited purpose of showing WBF's general scheme of intent to defraud. He emphasizes that intent to defraud is an element of his cause of action under the Federal Odometer Fraud Act.

WBF moved in limine to exclude any reference to the fourteen trucks. In a written order responding to WBF's motion in limine, the trial court ruled any evidence relating to the other fourteen trucks would be more prejudicial than probative.

This court has ruled that similar acts are admissible for the limited purpose of showing intent to defraud, not for showing the alleged fraud was actually committed, if the acts are of the same nature and close in point of time to the act in issue. *Fulwider* v. *Woods*, 249 Ark. 776, 461 S.W.2d 581 (1971).

The jury found WBF was liable to Smith. Obviously, since Smith successfully proved WBF had the requisite intent to defraud, we cannot say that Smith demonstrated any prejudice from the exclusion of this evidence.

### 2. Motion in Limine

Smith argues the trial court erred in hearing WBF's motion in limine on the afternoon before trial without giving Smith ten days to respond to the motion as required by ARCP Rule 78(b). Smith claims WBF had plenty of advance notice through discovery that Smith was going to offer the evidence WBF sought to exclude, and the motion was nothing more than a last minute attempt to deprive Smith of an opportunity to file a written response and to interrupt counsel's preparation for trial the next day. Here, Smith does not challenge the substance of the trial court's ruling on the motion. Rather, he challenges the timing of both the motion and the hearing thereon, and the fact he did not have ten days to file a written response pursuant to ARCP Rule 78(b). He claims WBF's conduct was an abuse of pretrial procedure.

WBF responds that a motion in limine is just what its name implies, a motion made "preliminarily" or on the threshold of trial, and thus WBF committed no error in waiting until the day before trial to file the motion. In addition, WBF points out that Smith had more time to respond to WBF's contentions at the hearing than he would have had at trial.

We agree with WBF's response. This court has stated that motions in limine are to enlighten the court and advise counsel of the specific nature of the anticipated evidence so that the court may intelligently act on such motions. *Schichtl* v. *Slack*, 293 Ark. 281, 737 S.W.2d 628 (1987). Motions in limine are not ordinarily used to extinguish an entire claim or defense. Rather, they are usually used to prohibit the mentioning of some specific matter, such as an inflammatory piece of evidence, until the admissibility of that matter has been determined out of the hearing of the jury. *Id.*, (citing *Lewis* v. *Buena Vista Mutual Ins. Ass'n*, 183 N.W.2d 198 (Iowa 1971)).

Although the subject of responses to motions is contemplated by the Arkansas Rules of Civil Procedure, the subject

is not clearly addressed therein. There is no specific requirement of a written response to a written motion; ARCP Rule 78(b) merely requires that if a written response is to be filed, it must be done so within ten days of service of the motion. However, a trial court should either allow a written response to the motion or hold a hearing at which a response is heard. David Newbern, *Arkansas Civil Practice and Procedure* § 10-3 (2d ed. 1993). As Smith appeared at the hearing and responded to the motion in limine, we cannot say any error occurred in deciding the motion the day before trial.

### C. ISSUES OTHER THAN DAMAGES — CROSS-APPEAL
### 1. Heavy Truck Exemption

WBF moved for a directed verdict on the grounds that it was exempt from providing odometer disclosures under the Federal Odometer Fraud Act. WBF relies on 49 C.F.R. § 580.6(a)(1) (1992), which exempts transferors of vehicles with gross vehicle weight ratings in excess of 16,000 pounds from the Act's disclosure requirements.

Smith responds with two arguments. First, Smith claims there is a split of authority on whether the heavy truck exemption is valid due to the fact that it was created in regulations promulgated by the National Highway Traffic Safety Administration and not in part of the Act itself. Second, Smith claims even if this court finds the exemption to be valid, WBF waived its exemption by giving the disclosure statement to Smith.

Smith is correct in pointing out the federal district courts' split of authority on the validity of the exemption. *See e.g., Mitchell* v. *White Motor Credit Corp.* 627 F. Supp. 1241 (M.D. Tenn. 1986) (holding the exception valid); *Davis* v. *Dils Motor Co.*, 566 F. Supp. 1360 (S.D.W.Va. 1983) (holding the exemption void). However, this court need not decide the validity of the exemption because, as the trial court correctly ruled, WBF clearly waived any exemption when it issued the disclosure statement in this case.

Waiver requires the voluntary relinquishment of a known right. This court has defined waiver as the voluntary abandonment or surrender by a capable person of a right known

to him to exist, with the intent that he shall forever be deprived of its benefits, and it may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it. *Ray Dodge, Inc.* v. *Moore*, 251 Ark. 1036, 479 S.W.2d 518, (1972).

The trial court ruled that if WBF was not required to issue the odometer statement, it could not voluntarily do so and then claim it was not bound by its voluntary actions. We find no error in this ruling.

W.C. Bennett of WBF stated in a deposition that he was aware of the heavy truck exemption and the split of authority on its validity. John Harrison, heavy truck sales manager for WBF at the time in question, stated in a deposition that he was aware of the exemptions from disclosure of odometer statements but that it was WBF's policy to issue a disclosure statement on every vehicle sold, including heavy trucks. Based on these testimonies and the fact that WBF gave Smith an odometer statement when the truck was sold, we conclude WBF made a valid waiver of any right to claim exemption from the Act.

### 2. Insufficient Evidence Appellee Altered Odometer on Appellant's Truck

This argument deals with 15 U.S.C. § 1984 which prohibits the resetting, disconnection or alteration of the odometer of any vehicle with intent to change the number of miles indicated thereon.

WBF moved for a directed verdict on the grounds there was no evidence that WBF disconnected, altered, or reset the odometer on Smith's truck. WBF argues the only evidence that WBF could have altered Smith's odometer is a parts invoice issued by WBF for repairs to Smith's truck one week before the transfer from Ford Motor Credit to WBF. WBF contends this is purely speculative evidence and does not prove that WBF altered the odometer, therefore, the trial court erred in submitting this issue to the jury.

In determining whether a directed verdict should have been granted, we view the evidence in the light most favorable to the party against whom the verdict is sought and give it its highest probative value, taking into account all reasonable inferences

deducible from it. *Mankey* v. *Wal-Mart Stores, Inc.*, 314 Ark. 14, 858 S.W.2d 85 (1993). A motion for a directed verdict should be granted only if there is no substantial evidence to support a jury verdict. *Id.* Where the evidence is such that fair-minded persons might reach different conclusion, then a jury question is presented, and the directed verdict should be reversed. *Id.*

With respect to 15 U.S.C. § 1984, Smith is required to prove that the odometer alteration occurred while the truck was in WBF's dominion and control. *See Delay* v. *Hearn Ford*, 373 F. Supp. 791 (D.S.C. 1974). The invoice indicates the truck was in WBF's possession before Ford Motor Credit transferred the truck to WBF. Thus, the jury could have concluded the odometer was rolled back while the truck was in WBF's possession. Viewing the evidence in the light most favorable to Smith, we conclude this evidence is substantial evidence to support the verdict of liability. The trial court did not err in denying WBF's motion.

### 3. Insufficient Evidence of Failure To Disclose Actual Mileage

This argument deals with liability under 15 U.S.C. § 1988 which requires a transferor to disclose either the actual mileage on a vehicle's odometer or that the actual mileage is unknown. This argument also concerns 15 U.S.C. § 1989, which provides for recovery of damages from any person who violates the Act with an intent to defraud.

WBF moved for a directed verdict on the grounds that Smith had not proved WBF knowingly gave a false statement as to the odometer reading with the intent to defraud Smith. WBF contends that Smith is required to prove WBF had actual knowledge that the odometer had been altered.

Actual knowledge is not a requirement under the Federal Odometer Fraud Act; constructive knowledge or reckless disregard is sufficient. *Haynes* v. *Manning*, 917 F.2d 450 (10th Cir. 1990). That an odometer was tampered with or that a transferor knew or should have known the mileage was false can be inferred from the facts. *Bryant* v. *Thomas*, 461 F. Supp. 613 (D. Neb. 1978). Intent to defraud arises from proof of change in an odometer reading and the seller's failure to disclose such

change, in absence of an explanation of the odometer change. *Delay*, 373 F. Supp. 791.

■ Evidence was presented from which the jury could have concluded the odometer disclosure statement issued WBF was false and with an intent to defraud. A service company repaired the truck in November 1986 and noted the mileage at 84,274. In January 1987, Landis returned the truck to Ford Motor Credit, which then certified the mileage to WBF at 45,890. One week prior to that disclosure statement, WBF had possession of the truck and ordered repairs for it. WBF sold the truck to Smith in July 1987 and disclosed the mileage to be 45,974.

The foregoing evidence is substantial evidence that the odometer was rolled back. In the absence of an explanation of how the alteration occurred, that is all that needs to be proved. *Delay*, 373 F. Supp. 791. We conclude the trial court did not err in denying WBF's motion for directed verdict.

### 4. Admission of Hearsay Documents

At issue here is the admissibility of two sets of documents, a computer printout from J.A. Riggs Tractor Company and registration certificates from the Department of Finance and Administration (DF&A). WBF argues these two sets of documents are hearsay and not admissible under the business records exception or public records exception.

Specifically, WBF contends the computer printout lacked a proper foundation in that no one at J.A. Riggs Tractor Company actually made the record. In other words, the information on the printout was entered by someone who worked for a business other than J.A. Riggs Tractor Company, and no one from that other company testified as to the accuracy and reliability of the information in the printout. WBF contends the DF&A registration certificates should not have been admitted under the public records exception because there is no law requiring the registration certificates to contain the odometer reading.

The service manager at J.A. Riggs Tractor Company testified their computer is part of a system wherein all Caterpillar warranty repairs and service program repairs are entered when made across the country. He acknowledged there was room for error in the entry of information into the computer, but also stated

the information contained in the computer system was reliable enough for him to make the decision not to do any service program repairs on Smith's truck because of the mileage discrepancy and because the same repairs had already been made.

An employee from the Bald Knob DF&A office testified there was no written policy requiring them to put odometer readings on registration certificates, but that she was trained to do so, that it was the policy in her office to do so, and that she had followed that policy since she began work for DF&A in 1976. She also stated she followed that policy when she registered the truck in question in July 1986 and recorded the mileage at 31,022.

Rulings on evidentiary matters are within the trial court's discretion. *In re Estate of O'Donnell*, 304 Ark. 460, 803 S.W.2d 530 (1991). Considering the foregoing testimonies and the foundations laid therein, we cannot say the trial court abused its discretion in admitting the questioned documents.

## IV. CONCLUSION

We reverse and remand both the direct appeal and cross-appeal for a new trial. Smith should be allowed to present evidence of lost profits resulting from the odometer fraud. The jury should be instructed on an appropriate disaffirmance remedy and if any amount is awarded, it should not be trebled. However, any amount of consequential damages awarded is subject to the trebling provision of the Act.

BROWN, J., concurs.

DUDLEY, J., not participating.

ROBERT L. BROWN, Justice, concurring. I agree with reversal and remand in this case but see no reason to remand for a full-blown trial on liability as well as damages. That clearly flies in the face of judicial economy. My preference is for a remand solely for the purpose of determining damages, since error in assessing damages is the basis for the reversal.

As the majority opinion points out, our cases are divided on this issue. But our rules clearly and unambiguously permit a new trial on a segmented issue such as damages. Ark. R. Civ. P. 59(a). Rule 59(a) is ample authority to conduct a trial on damages only and to the extent our cases have disallowed this in the past, I

would overrule them.

Moreover, the majority opinion does not address clearly the issue of odometer alterations on fourteen other trucks and using this proof as evidence of intent to defraud in a new trial on liability. It should be admissible. The majority simply says that since intent was shown in the first trial, no prejudice accrued to Smith because he prevailed. But what about retrial on the liability issue? Can it be used then? The majority opinion gives no direction on this point.