George SCHICHTL d/b/a GEORGE'S AUTOMOTIVE
REPAIR *v.* James SLACK

87-90                                              737 S.W.2d 628

Supreme Court of Arkansas
Opinion delivered October 12, 1987

*Wright, Lindsey & Jennings*, for appellant.

*James F. Swindoll, P.A.*, for appellee.

STEELE HAYS, Justice. Appellee James Slack filed suit against appellant George Schichtl for negligently installing a new motor and rebuilt transmission in Slack's pickup truck. The complaint alleged negligent repair of the transmission, failure to repair defects, failure to warn of dangers, and failure to exercise ordinary care under the circumstances. Soon after the work was performed the truck caught fire and burned. The jury upheld Slack's claim by a general verdict and awarded $7,719.13 for the truck and tools destroyed by the fire.

On the morning of trial Schichtl filed a motion in limine to exclude any evidence or argument that Schichtl failed to warn Slack of the possibility of a fire from the combustion of transmission fluid boiling out onto the exhaust manifold, and in failing to warn Slack to use an external cooler. The trial judge asked for cases supporting that position and counsel answered, "I couldn't find any cases." The motion was denied and Schichtl has

appealed. The only point for reversal is that the trial court erred in denying the motion in limine. We affirm.

The testimony established that James Slack had dealt with George Schichtl for some eight years in servicing Slack's vehicles. Slack owned a 3,000 pound boat and had experienced problems with the transmission on his truck in towing the boat. Schichtl and Slack decided to put a larger engine and a transmission in the truck. The work was completed at a cost of $1,922.86 and the truck was delivered to Slack on July 11, 1985. Between the initial delivery and the fire some three weeks later, Slack twice returned the truck to Schichtl because the engine was overheating and the transmission was making a roaring noise. Schichtl attributed the noise in the transmission to the front pump gears not meshing properly. The other problem he attributed to a faulty sending unit, which only made it appear the engine was overheating. He testified that the cause of the fire was transmission fluid boiling out of the dipstick onto the manifold and igniting; he said, "As a mechanic you see that situation and fire is a real danger. I didn't tell Mr. Slack about the fire danger but I knew it existed." Schichtl never told Slack there was any limit on what he could pull "except common sense." Slack testified when he drove the truck after picking it up the second time the temperature was still running hot.

On the morning of July 30 Slack left Conway for Pine Bluff towing a party barge, weighing about 1,600 pounds. At Redfield a passing motorist signaled to him that flames were coming from the engine compartment. He managed to get out of the truck just before it was totally destroyed by fire. Slack testified he was never warned of the danger of fire and had no indication that a fire was going to occur. Moreover, he said, "George told me to disregard the temperature gauge because he didn't have it hooked up right."

George Schichtl cites us to numerous cases recognizing a duty to warn in certain situations but he has cited no authority for the proposition that, as a matter of law, he was under no duty to warn Slack either of the possibility of fire or the use of an external cooler. Schichtl argues correctly that whether a duty is owed is a question of law to be decided by the court. We fully agree. But ordinarily the answer depends on the final analysis on

the bits and pieces of the evidence. As Prosser puts it, "Before any duty, or any standard of conduct, may be set, there must first be proof of facts which give rise to it; and once the standard is fixed, there must be proof that the actor has departed from it." Prosser and Keeton on Torts (5th Edition), Chapter 6, p. 235. There is no real issue but that Schichtl owed Slack a duty to exercise ordinary care. The jury was instructed without objection on the general principles of negligence. In a similar scrutiny of the facts in *Keck* v. *American Employment Agency, Inc.*, 279 Ark. 294, 652 S.W.2d 2 (1983), we disagreed with the trial court, which had granted a directed verdict for the defendant, and concluded that there was a jury issue as to whether an employment agency had breached a duty to its clientele to exercise ordinary care for their protection from persons only pretending to be prospective employers.

■■ Schichtl urges that because this is not a product liability case there could be no duty to warn. That argument overlooks an essential difference between common law liability based on negligence and the modern concept of product liability. In the latter, a manufacturer or supplier is liable by virtue of having placed a defective, unreasonably dangerous product on the market, *irrespective* of any knowledge of the dangerous character of the product. Whereas in liability based on negligence, whether one knew or should have known of a potential danger is a necessary constituent of fault. The common law has recognized a duty under such circumstances well before product liability was enacted in Arkansas in 1973. See *Green* v. *Equitable Powder Mfg. Co.*, 95 F.Supp. 127 (1951) and *Dulin* v. *Circle F. Industries, Inc.*, 558 F.2d 456 (1977).

We need not decide whether there was a duty under the circumstances of this case, because we do not agree that a motion in limine was the proper means of testing an entire theory of law advanced by the plaintiff. That can be accomplished by a motion under ARCP Rule 12(b)(6), for example, with a supporting brief of legal authorities, or by proper objection to the evidence itself and by a motion for a directed verdict if the plaintiff's case is seen as resting on a faulty legal theory. Schichtl twice moved for a directed verdict, but he has not asked that we review those denials on appeal and they are waived.

■   Appellee points out that no objection was made when evidence was offered with respect to a lack of warning, urging that any error is waived. But in *Ward* v. *State*, 272 Ark. 99, 612 S.W.2d 118 (1981), we said that where a motion in limine is made to specific evidence, and denied, the objection is preserved. We have not departed from that position, but we have pointed out that motions in limine are not to be used as a sweeping means of testing issues of law. Such motions are to be used to prevent some specific matter, perhaps inflammatory, from being interjected prior to the trial court's having decided on its admissibility outside the hearing of the jury. *Kitchens* v. *State*, 271 Ark. 1, 607 S.W.2d 345 (1980); *Arkansas State Highway Comm.* v. *Pulaski Inv. Co.*, 272 Ark. 389, 614 S.W.2d 675 (1981).

■ ■   In *Kitchens* v. *State* we refused to reverse the denial of a vague motion in limine which, like this one, was filed without legal authority on the morning of trial. We cited *Bridges* v. *City of Richardson*, 349 S.W.2d 644 (Tex. Civ. App. 1961) where it was said that motions in limine are to enlighten the court and advise counsel of the specific nature of the anticipated testimony so that the court may intelligently act on such motions. Here, the trial judge knew nothing of the case except as may have been revealed by the pleadings or the brief argument in chambers. Yet he was asked to rule that Schichtl was under no duty to warn Slack of the possibility of fire no matter what the circumstances of the case. Without some legal authority supporting that proposal, we do not regard it as error for the trial court to refuse to grant a motion in limine. In *Lewis* v. *Buena Vista Mutual Ins. Assn*, 183 N.W.2d 198 (Iowa, 1971), also cited approvingly in *Kitchens*, the Iowa Supreme Court described the purpose of motions in limine:

> The motion in limine is a useful tool, but care must be exercised to avoid indiscriminate application of it lest parties be prevented from even trying to prove their contentions. That a plaintiff may have a thin case or a defendant a tenuous defense is ordinarily insufficient justification for prohibiting such party from trying to establish the contention. Nor should a party ordinarily be required to try a case or defense twice—once outside the jury's presence to satisfy the trial court of its sufficiency and then again before the jury. Moreover, the motion in limine is not ordinarily employed to choke off an entire

claim or defense, as it was here regarding arson. Rather, it is usually used to prohibit mention of some specific matter, such as an inflammatory piece of evidence, until the admissibility of that matter has been shown out of the hearing of the jury.

The judgment appealed from is affirmed.