Shelly TURNER, Administratrix of the Estate of Ricky Turner,
*Deceased* v. NORTHWEST ARKANSAS
NEUROSURGERY CLINIC, P.A.

CA 03-208                                           133 S.W.3d 417

Court of Appeals of Arkansas
Division IV
Opinion delivered December 3, 2003

[Petition for rehearing denied January 7, 2004.]

*Benson, Robinson & Wood, P.L.C.*, by: *Jon Robinson*; *Milligan Law Office*, by: *Phillip J. Milligan*, for appellant.

*Bassett Law Firm*, by: *Walker Dale Garrett* and *Shannon L. Fant*, for appellee.

S AM BIRD, Judge. Shelly Turner, administratrix of the Estate of Ricky Turner, deceased, brings this appeal from the entry of summary judgment against her. Turner had filed suit against appellee Northwest Arkansas Neurosurgery Clinic, P.A. (Clinic), for negligent hiring, supervision, and retention. She argues three points on appeal: the trial court erred in denying her motion to reconsider an order in limine, in granting summary judgment to the Clinic, and in denying her request to take certain depositions. We hold that the trial court abused its discretion in its evidentiary and discovery rulings, and that genuine issues of material fact remain for trial.

This lawsuit is a medical-malpractice action that began after the death of Mr. Turner, who underwent a laminectomy on September 26, 1996. The surgery was performed by Dr. Kelly Danks and Dr. Luke Knox, who were employed by the Clinic. Complications developed after the surgery, and Mr. Turner died from what was later revealed to be an Escherichia coli (more commonly known as E. coli) infection. According to Mrs. Turner, Dr. Danks pierced the psoas muscle and the bowel of Mr. Turner while performing surgery, causing his death. Mrs. Turner filed her malpractice suit against Drs. Danks and Knox individually, the Clinic, Washington Regional Medical Center, and two other physicians; the medical center and the two other physicians were later dismissed from the case. Mrs. Turner sought to hold the Clinic vicariously liable for the actions of Drs. Danks and Knox. She contended that, at the time of Mr. Turner's surgery, Dr. Danks was suffering from undiagnosed bipolar disorder and was being improperly treated by Dr. Knox, who was not his physician, with the contraindicated antidepressant Prozac. She also alleged that Dr. Danks was inhaling nitrous oxide gas because the Prozac exacerbated his mental disorder.

The Clinic successfully moved for an order in limine prohibiting the admission of any evidence relating to Dr. Danks's mental illness, use of Prozac, abuse of nitrous oxide gas, and subsequent suspension from the practice of medicine by the Arkansas Medical Board. Although Mrs. Turner dismissed her complaint against Dr. Knox without prejudice, she again included him as a defendant when she filed her second amended complaint on November 13, 2000. In her second amended complaint, Mrs. Turner added causes of action against the Clinic and Dr. Knox for the negligent hiring, supervision, and retention of Dr. Danks. She sought to depose Dr. Danks's treating physicians. The trial court, however, denied her discovery request and entered a protective order prohibiting the taking of those depositions.

On July 31, 2002, Mrs. Turner filed a motion to reconsider the order in limine and attached affidavits, excerpts from depositions, copies of Dr. Danks's personal medical records,[1] and Dr. Danks's testimony before the medical board in an effort to demonstrate that Dr. Danks was suffering from bipolar disorder, was using Prozac, and was abusing nitrous oxide gas before the

---

[1] These records are under seal.

surgery. The trial court denied the motion to reconsider and held that Mrs. Turner had failed to state a cause of action against Dr. Knox for negligence. Mrs. Turner settled her individual claims against Dr. Danks, leaving only the negligent hiring, supervision, and retention claims against Dr. Knox and the Clinic.

The Clinic then moved for summary judgment. The trial court granted this motion, stating:

> That the Court further finds the defendants, Northwest Arkansas Neurosurgery Clinic, P.A., and Luke Knox, M.D., are entitled to summary judgment on plaintiff's allegations of negligent hiring, supervision, and retention. The Court finds the plaintiff has no admissible evidence to support these claims beyond pure speculation and conjecture and that there are no genuine issues of material fact and the defendants are entitled to summary judgment as a matter of law. Plaintiff's allegations of negligent hiring, negligent supervision, and negligent retention are therefore dismissed with prejudice.

In this order, the trial court denied Mrs. Turner's motion for reconsideration of the dismissal of her cause of action against Dr. Knox for negligent post-operative care. Mrs. Turner settled her claims against Dr. Knox, leaving only her claims against the Clinic.

On appeal to this court, Mrs. Turner argues that the trial court erred: (1) in denying her motion to reconsider the order in limine, (2) in granting summary judgment to the Clinic on her claims of negligent hiring, supervision, and retention, and (3) in denying her the opportunity to depose Dr. Danks's treating physicians.

### The Motion to Reconsider

Mrs. Turner argues that the trial court abused its discretion in denying her motion to reconsider its order holding as inadmissible all evidence of Dr. Danks's bipolar disorder, nitrous oxide abuse, suspension by the medical board, and inappropriate treatment with Prozac. She contends that this evidence was essential to her negligent hiring, supervision, and retention claims; was relevant under Ark. R. Evid. 401; and was not inadmissible under Ark. R. Evid. 403. In denying her motion to reconsider, the trial court accepted the Clinic's argument that this evidence was so prejudicial that its probative value was outweighed. The trial court

also adopted the Clinic's assertion that no evidence existed in regard to Dr. Danks's mental impairment or abuse of nitrous oxide gas or Prozac prior to or on the date of Mr. Turner's surgery.

To challenge the trial court's ruling, Mrs. Turner points out that, in support of her motion to reconsider, she offered evidence of the following: Dr. Danks testified under oath before the medical board that he was suffering from depression, for which he received Prozac from his partner, Dr. Knox, in the fall of 1996; Dr. Danks testified before the medical board that his mental illness was exacerbated by the use of Prozac and that this led to his use of nitrous oxide gas; in its emergency November 7, 1997, order and its February 27, 1998, order, the medical board noted that Dr. Danks had used nitrous oxide during 1996; Dr. Phillip Villanueva gave an opinion that, on the date of Mr. Turner's surgery, Dr. Danks was suffering from untreated bipolar disorder and was using Prozac; and Dr. Alan Cohen gave an opinion that, on the date of Mr. Turner's surgery, Dr. Danks was suffering from undiagnosed bipolar syndrome, which was exacerbated by his contraindicated use of Prozac. Mrs. Turner argues that the evidence she attached to her motion to reconsider demonstrates that Dr. Danks was impaired during late summer 1996 until March 1997. She contends that, although Dr. Danks was not diagnosed with bipolar disorder until after Mr. Turner's surgery, it is clear from her evidence that he was exhibiting symptoms of the illness before the surgery. Mrs. Turner also points out that she attached to her motion copies of Dr. Danks's medical records, which revealed that he began experiencing mental illness in March 1996, began using Prozac in September 1996, and began abusing nitrous oxide gas as early as August 1996, one month before Mr. Turner's surgery. She argues that the excluded evidence is absolutely essential to prove that Dr. Danks breached the standard of care and to establish what the Clinic knew or should have known about his mental impairment.

Citing *Schichtl v. Slack*, 293 Ark. 281, 737 S.W.2d 628 (1987), Mrs. Turner contends that motions in limine are not to be used as a sweeping means of testing issues of law. She asserts that simple intoxication is not the basis for her contention that Dr. Danks breached the neurosurgeon's standard of care in performing surgery on Mr. Turner. Instead, she argues, Dr. Danks's continuing medical condition, along with unsupervised use of Prozac and abuse of nitrous oxide gas, caused his breach of the

standard of care. She also argues that the Clinic knew or should have known that his conduct would subject patients to an unreasonable risk of harm.

■ We will not reverse the trial court's decision to admit or refuse evidence in the absence of an abuse of that discretion and a showing of prejudice. *Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001).

■ In order to determine what evidence was relevant to Mrs. Turner's cause of action, we must first discuss its elements. In *Sparks Regional Medical Center v. Smith*, 63 Ark. App. 131, 976 S.W.2d 396 (1998), we stated that employers are subject to direct liability for the negligent hiring, retention, or supervision of their employees when third parties are injured by the tortious acts of unfit, incompetent, or unsuitable employees. This must be established by proving that the employer knew, or in the exercise of ordinary care should have known, that its employee's conduct would subject third parties to an unreasonable risk of harm. *Id.* Accord *Saine v. Comcast Cablevision of Ark., Inc.*, 354 Ark. 492, 126 S.W.3d 339 (2003); *Jackson v. Ivory*, 353 Ark. 847, 120 S.W.3d 587 (2003); *Madden v. Aldrich, supra*; *Regions Bank & Trust v. Stone County Skilled Nursing Facility, Inc.*, 345 Ark. 555, 49 S.W.3d 107 (2001).

■ Arkansas Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevance is a concept of admissibility and not one of weight. Wilson Howe, *Arkansas Rules of Evidence* 41-42 (2d ed. 1995). In that treatise, the author states:

> Thus, to be relevant, evidence need not conclusively establish the fact of consequence. All it must do, when considered in the entire context of the trial, is make the proposition for which it is offered more or less probable than it would be without it.
>
> A very important aspect of the definition of relevant evidence is contained in the phrase "*any* tendency." ... [U]nless the rationale of this Rule's definition is followed carefully and with the realization that evidence need only have a "tendency," the error of arguing its weight rather than admissibility will be easily made.

The same analysis is applicable whether the evidence be direct, circumstantial, real or demonstrative. The test remains whether it has "any tendency" to prove or disprove a proposition consequential to determining the case. . . .

. . . .

. . . . [E]vidence is not rendered irrelevant simply because, standing alone, its probative force is weak or its circumstantial nature requires many connecting links.

*Id.* at 42-43 (emphasis in original).

Even though evidence is relevant according to Rule 401, it may be excludable under Rule 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." A trial court must first consider whether the relevant evidence creates a danger of unfair prejudice and, second, whether the danger of unfair prejudice outweighs its probative value. *Aka v. Jefferson Hosp. Ass'n, Inc.*, 344 Ark. 627, 42 S.W.3d 508 (2001). The probative value of evidence correlates inversely to the availability of other means of proving the issue for which the allegedly prejudicial evidence is offered. *Easterling v. Weedman*, 54 Ark. App. 22, 922 S.W.2d 735 (1996). The trial court has discretion in determining the relevance of evidence and in gauging its probative value against unfair prejudice, and its decision will not be reversed absent a manifest abuse of that discretion. *Jackson v. Buchman*, 338 Ark. 467, 996 S.W.2d 30 (1999).

In *Arkansas Rules of Evidence, supra*, 55-56, the author states:

The key phrase in the rule is "substantially outweighed." This phrase and the general spirit of the Arkansas Rules strongly favor admissibility of relevant evidence. Thus the probative value of questioned evidence is pitted against the dangers it poses calling for exclusion only if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. . . .

. . . .

> . . . . The kind of prejudice the Rule addresses, of course, is *unfair* prejudice, not the kind of "prejudice" that inheres in all evidence that advances one side to the detriment of the other. Unfair prejudice will naturally confuse the issues, mislead the jury and cause undue delay. But it is to be distinguished from the normal tendency of proper evidence to advance one's cause. This unfair prejudice in the Rule 403 sense means an undue influence on the jury that substantially outweighs its persuasive force. . . .

(Emphasis in original.)

██ Thus, the mere fact that evidence is prejudicial to a party does not make it inadmissible; it is only excludable if the danger of *unfair* prejudice substantially outweighs its probative value. *See Advocat, Inc. v. Sauer*, 353 Ark. 29, 111 S.W.3d 346 (2003); *Marvel v. Parker*, 317 Ark. 232, 878 S.W.2d 364 (1994). The prejudice referred to in Rule 403 denotes the effect of the evidence upon the jury, not the party opposed to it. *Easterling v. Weedman, supra.*

██ A motion in limine is a threshold motion, and a trial court is at liberty to reconsider its prior rulings during the course of a single trial. *ConAgra, Inc. v. Strother*, 340 Ark. 672, 13 S.W.3d 150 (2000). In *Schichtl v. Slack*, 293 Ark. at 285-86, 737 S.W.2d at 630-31, the supreme court stated:

> [M]otions in limine are not to be used as a sweeping means of testing issues of law. Such motions are to be used to prevent some specific matter, perhaps inflammatory, from being interjected prior to the trial court's having decided on its admissibility outside the hearing of the jury. *Kozy Kitchen v. State*, 271 Ark. 1, 607 S.W.2d 345 (1980); *Arkansas State Highway Comm. v. Pulaski Inv. Co.*, 272 Ark. 389, 614 S.W.2d 675 (1981).

> In *Kozy Kitchen v. State* we refused to reverse the denial of a vague motion in limine which, like this one, was filed without legal authority on the morning of trial. We cited *Bridges v. City of Richardson*, 349 S.W.2d 644 (Tex.Civ.App. 1961) where it was said that motions in limine are to enlighten the court and advise counsel of the specific nature of the anticipated testimony so that the court may intelligently act on such motions. Here, the trial judge knew

nothing of the case except as may have been revealed by the pleadings or the brief argument in chambers. Yet he was asked to rule that Schichtl was under no duty to warn Slack of the possibility of fire no matter what the circumstances of the case. Without some legal authority supporting that proposal, we do not regard it as error for the trial court to refuse to grant a motion in limine. In *Lewis v. Buena Vista Mutual Ins. Assn*, 183 N.W.2d 198 (Iowa, 1971), also cited approvingly in *Kozy Kitchen*, the Iowa Supreme Court described the purpose of motions in limine:

> The motion in limine is a useful tool, but care must be exercised to avoid indiscriminate application of it lest parties be prevented from even trying to prove their contentions. That a plaintiff may have a thin case or a defendant a tenuous defense is ordinarily insufficient justification for prohibiting such party from trying to establish the contention. Nor should a party ordinarily be required to try a case or defense twice — once outside the jury's presence to satisfy the trial court of its sufficiency and then again before the jury. Moreover, the motion in limine is not ordinarily employed to choke off an entire claim or defense, as it was here regarding arson. Rather, it is usually used to prohibit mention of some specific matter, such as an inflammatory piece of evidence, until the admissibility of that matter has been shown out of the hearing of the jury.

To her second amended complaint, Mrs. Turner attached copies of a number of documents that contain evidence of Dr. Danks's mental impairment, abuse of nitrous oxide gas, and use of Prozac at or before the time of Mr. Turner's surgery. Mrs. Turner included copies of Dr. Danks's medical records from his treatment at three separate psychiatric hospitals. These records contain evidence that Dr. Danks had used nitrous oxide as early as September 1996; that his bipolar symptoms had begun in March 1996; that he had taken Prozac from September through November 1996; and that he had used nitrous oxide over a period of time dating back to August 1996. Mrs. Turner also supplied copies of the medical board's emergency suspension on November 7, 1997, wherein it stated that on various occasions in 1996 and 1997 Dr. Danks had inhaled nitrous oxide. She attached transcripts of the hearings before the medical board. In the first hearing, Dr. Danks admitted to the board that he had used Prozac in the fall of 1996, as prescribed by Dr. Knox. Mrs. Turner also attached a copy of the deposition of Brenda Cook-Willis, who while work-

ing as a nurse at a Houston, Texas, hospital in 1990 or 1991, caught Dr. Danks abusing nitrous oxide gas.[2]

In support of her motion to reconsider, Mrs. Turner filed copies of excerpts from Dr. Danks's testimony before the medical board, his sealed medical records, and the affidavits of Dr. Alan Cohen and Dr. Phillip Villanueva. Both doctors opined that, on the day of Mr. Turner's surgery, Dr. Danks was impaired and that he breached the applicable standard of care. She also attached a copy of Dr. Hugo Smith's deposition in which he stated that one of Dr. Danks's instruments had perforated·Mr. Turner's colon and that Dr. Knox had negligently hired and supervised Dr. Danks.

We believe that the evidence that Mrs. Turner was prohibited from introducing was completely relevant and essential to her cause of action, and that its "prejudice" was not unfair. We therefore reverse the trial court's refusal to reconsider its order in limine.

### Summary Judgment

Mrs. Turner argues that the trial court erred in granting summary judgment to the Clinic on the issues of negligent hiring, supervision, and retention. In reviewing summary-judgment cases, we determine whether the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Alberson v. Automobile Club Interins. Exchange*, 71 Ark. App. 162, 27 S.W.3d 447 (2000). The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* All proof submitted with a motion for summary judgment must be viewed in the light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *McWilliams v. Schmidt*, 76 Ark. App. 173, 61 S.W.3d 898 (2001). Summary judgment is not appropriate where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses

---

[2] This deposition was taken in a malpractice case filed against Dr. Danks in Texas.

might reasonably be drawn and reasonable minds might differ. *Lee v. Hot Springs Village Golf Sch.*, 58 Ark. App. 293, 951 S.W.2d 315 (1997).

██ ██ It is apparent that, in deciding whether to grant summary judgment, the trial court weighed the evidence and determined that Mrs. Turner's experts were not credible. However, it is not the role of the trial court, in deciding whether to grant summary judgment, to weigh and resolve conflicting testimony, but to simply decide whether such questions exist to be resolved at trial. *See Adams v. Wolfe*, 73 Ark. App. 347, 43 S.W.3d 757 (2001). The evidence discussed above, which should have been ruled admissible, clearly establishes the existence of genuine issues of material fact as to whether Dr. Danks breached his standard of care when operating on Mr. Turner and whether the Clinic knew or should have known that Dr. Danks would pose an unreasonable risk of harm to patients. Accordingly, we reverse the award of summary judgment to the Clinic and remand this case for trial.

### Depositions

In her third point, Mrs. Turner argues that, if we reverse and remand for trial, she should be given the opportunity to depose Dr. Danks's treating physicians,because depositions play an important and critical role in litigation. She asserts that she should be given the chance to explore any other leads to evidence that the treating physicians could offer her in the preparation of her case. We agree.

██ At the hearing on the Clinic's motion for a protective order, the trial court stated that it would not permit Mrs. Turner to depose people whom it seriously doubted she could call as witnesses at trial. However, that is not the standard by which such decisions should be made. Arkansas Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery regarding any matter, not privileged, that is relevant to the issues in the pending action, and that it is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. One of the purposes of discovery procedures is to provide a device for ascertaining not only the facts, but information as to the existence or whereabouts of facts relative to the basic

issues between the parties; this permits a litigant to secure the type of information that may lead to the production of other relevant evidence or that will facilitate his preparation for trial. *Rickett v. Hayes*, 251 Ark. 395, 473 S.W.2d 446 (1971).

The trial court has wide discretion in matters pertaining to discovery, and its decision will not be reversed absent an abuse of discretion. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). However, an abuse of discretion may be found when there was an undue limitation of the appellant's substantial rights under the prevailing circumstances. *Id.* The goal of discovery is to permit a litigant to obtain whatever information he may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. *Id.* Permissible discovery necessarily revolves around the cause of action alleged by the plaintiff, and from this cause of action, the trial court must fashion its rulings on discovery. *Id.*

We believe that, on remand, Mrs. Turner should be permitted to depose the doctors who treated Dr. Danks for his bipolar disorder.

Reversed and remanded.

HART and VAUGHT, JJ., agree.