Evender E. "Buddy" JONES, Administrator of the Estate of Michael Evender Jones, Deceased *v.* Jeffery E. CURRENS and M.G. Littlejohn

CA 08-136                                289 S.W.3d 506

Court of Appeals of Arkansas
Opinion delivered December 17, 2008

*Gibson Law Office*, by: *Chuck Gibson*, for appellant.

*Wright, Lindsey & Jennings, LLP*, by: *Jerry J. Sallings* and *Gary D. Marts, Jr.*, for appellees.

D.P. MARSHALL JR., Judge. This case stems from an accident involving a tractor–trailer driven by Jeffery Currens and a pick–up truck driven by Michael Jones. The wreck occurred in a curve of State Highway 165 near Dumas around 8:00 one morning. Jones was killed. The administrator of his estate brought this case against Currens and M.G. Littlejohn, who owned the tractor–trailer and employed Currens.

How the accident happened was much disputed. As the circuit court put it, the case "boils down to who was on the proper side of the road." The physical evidence, everyone agreed, established the vehicles' point of impact on the shoulder of Jones's lane. Jones's theory of the case was that Currens, impaired after a night of partying and drugs, mishandled the curve and caused the collision. Currens and Littlejohn's theory was that Jones's inattention, caused in part by drug use, led to the wreck. They argued that Jones's vehicle strayed into Currens's lane in the curve, and then both vehicles moved into Jones's lane trying to avoid one another

and collided. Accident reconstruction experts testified for both sides. After two days of trial, the jury returned a nine-person verdict for Currens and Littlejohn. The signing jurors wrote "fifty/fifty shared liability" on the verdict form. Jones appeals, seeking a new trial. He contends that the circuit court abused its discretion on four evidentiary issues. Currens and Littlejohn filed, but abandoned, a cross-appeal.

We are persuaded by Jones's argument that the circuit court abused its discretion, and prejudiced Jones's case, by admitting hearsay testimony from State Trooper Kelvin Fells about Currens's statements to him at the accident scene. The precise legal issue is whether an adequate foundation existed for the court's allowing this hearsay under the excited-utterance exception. It did not.

## I.

Trooper Fells investigated the collision. After brief testimony from Jones's employer, Jones called Fells as his second witness in his case-in-chief. Fells arrived at the scene approximately twenty minutes after the wreck. He testified that he spoke with Currens as soon as he got there. He also gave Currens a blank statement to fill out. Fells spent about ninety minutes at the scene studying the physical evidence and gathering information. He continued his investigation by interviewing some witnesses later.

In his written statement at the scene to Trooper Fells, Currens wrote:

> I was proceeding south on 165 when north bound lane driver came in to my lane in curve. The driver looked up and pulled to the left to avoid hitting me and I pulled to the left to avoid hitting him and head on collision happen.

The time on the copy of Currens's statement in the record is not entirely legible. Jones reads it as "9:[5]0." Currens and Littlejohn take issue with that reading in passing, but the statement's particular time was not developed below.

Fells is certified in accident reconstruction. And he prepared a diagram showing Jones's vehicle straying into Currens's lane and then recrossing the center line into his (Jones's) own lane to the point of impact. Neither the diagram nor Currens's statement about what happened were mentioned during Jones's direct examination of Trooper Fells.

During cross-examination, Currens sought to introduce the Trooper's diagram. Jones objected. Before trial, he had attacked the diagram's hearsay basis in Currens's statement. The circuit court sustained the objection. The court then admitted a redacted version of the diagram, which does not show Jones's vehicle ever leaving his own lane. Jones argues now that the court abused its discretion by admitting the diagram because of its hearsay roots in Currens's statement. We disagree. The circuit court ruled for Jones on this issue, thus the redacted version of the Trooper's diagram. No abuse of discretion occurred in admitting that version of the diagram, which was silent about Jones's possible lane change and thus worked no prejudice. *Turner v. N.W. Ark. Neurosurgery Clinic, P.A.*, 84 Ark. App. 93, 100-04, 133 S.W.3d 417, 421-23 (2003).

When it came to Currens's statement to Trooper Fells at the scene, however, the circuit court handled the evidentiary issue differently. Currens sought to explore this issue on cross-examination too. Jones objected, citing the hearsay nature of Currens's statement. Currens responded that it was admissible under the excited-utterance exception. Another witness had testified on deposition that Currens was "distraught" immediately after the accident. (This witness gave the same testimony later in the trial.) Currens knew Jones. And Currens's statement was made at the accident scene, in the presence of the wrecked vehicles and Jones's body.

Trooper Fells's testimony about Currens's mental and emotional state was mixed. We quote this testimony in detail. Currens's lawyer has the Trooper on cross-examination.

Q. When you saw Mr. Currens at the scene and you got the statement from him, was he excited? What was his state of mind?

A. Shock. Like he was in shock. I mean he was sad about the situation.

Q. Was he distraught, hysterical?

A. No, he was — He talked to me calm. It was his facial expression. Several times he stated to me that "that was my friend." He was sad at the situation.

Q. Did he seem like he was at least under the influence of —

[Jones's Counsel]: I object, Your Honor.

The Court: On what basis, Mr. Gibson?

[Jones's Counsel]: He's already testified about alcohol and further stated he wasn't qualified to detect drug intoxication.

The Court: Well, he's asking a broader question. I'm going to let him go. He's got him on cross. He wants to know if he appeared under the influence of anything.

[Currens's Counsel]: Right. Thank you.

Q. Did he seem to be excited or under the influence of emotion, I guess is my question?

A. No, sir.

Q. Was he calm, sedate or —

A. I believe, like I said, he wasn't — He was calm and talked to me but, you know, he was just sad. He was sad and kind of a bit nervous. He was nervous.

Q. I believe you said earlier that he was stunned, I believe is what you said, or not?

A. He was shaken up.

When did Currens make his statement to Trooper Fells about Jones being in the wrong lane? The record before the circuit court, and us, is murky on this point. Currens could have told the Trooper what happened when Fells arrived and they spoke, some twenty minutes after the accident. Or Currens's explanation could have come from the statement that he wrote for Trooper Fells, at least an hour after the accident.

Based on this record, the circuit court overruled Jones's hearsay objection and allowed Trooper Fells's testimony about Currens's statement. The court's ruling was "I'm going to let it in under excited utterance. Present-sense impression also. Go ahead." Fells then testified:

> He told me that he was, you know, headed toward Dumas. And, of course, Mr. Jones was coming in the opposite direction. He told me that he knew that it was Mr. Jones's truck but all of a sudden Mr. Jones's vehicle was in his lane. And about that time both of them went in the same direction, collision happened there on the shoulder.

II.

All the parties acknowledge the obvious: this was hearsay. The circuit court allowed Trooper Fells to testify about Currens's out-of-court statement as evidence that Jones caused the accident by entering Currens's lane in the curve. Currens does not defend the circuit court's present-sense-impression alternative basis. Indeed, Currens's statement, even if made when Fells arrived at the scene, was too far removed from the wreck to qualify under this exception to the hearsay rule. Currens did not make his statement "while [he] was perceiving the event or condition, or immediately thereafter." Ark. R. Evid. 803(1); *see also Brown v. State*, 320 Ark. 201, 202-03, 895 S.W.2d 909, 910-11 (1995). Thus we come to the circuit court's other ground, and the core issue in the case: the excited-utterance exception.

The governing Arkansas Rule of Evidence 803(2) says:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> (2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

The wreck and Jones's death were no doubt startling events. The question, then, is whether Currens was still under the stress of those events when he explained what had happened.

"The theory of the excited[-]utterance exception is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." *Luedemann v. Wade*, 323 Ark. 161, 164, 913 S.W.2d 773, 775 (1996); *see generally* 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW §§ 1745-1750 (Chadbourn rev. 1976). In ruling on this exception, the circuit court should consider all the relevant circumstances: the lapse of time between the event and the statement; the declarant's age, mental condition, and physical condition; the characteristics of the event; and the statement's subject matter. *Fudge v. State*, 341 Ark. 759, 768-69, 20 S.W.3d 315, 320 (2000). The record must show that "the declarant's condition at the time was such that the

statement was spontaneous, excited, or impulsive rather than the product of reflection and deliberation." *Bell v. State*, 371 Ark. 375, 386-87, 266 S.W.3d 696, 706 (2007).

The statement need not be contemporaneous with the provoking event. But the statement must be close enough in time that it may "reasonably be considered a product of the stress of the accident, rather than of intervening reflection or deliberation." *Luedemann*, 323 Ark. at 164, 913 S.W.2d at 775. The trend in the law is toward relaxing the time element. *E.g.*, *Fudge*, 341 Ark. at 769, 20 S.W.3d at 320-21. Nonetheless, "[a]n excited utterance must have been made before there was time to contrive and misrepresent; that is, it must have been made before reflective and deliberative senses took over." *Luedemann*, 323 Ark. at 165, 913 S.W.2d at 775.

■ The circuit court here abused its discretion because an insufficient foundation existed for applying the exception on this record. First, the timing. Though not dispositive, the timing of Currens's statement to Trooper Fells is important. To make a fully informed judgment call, the circuit court needed to know whether Trooper Fells was about to recite what Currens told him orally when the Trooper got to the scene soon after the accident or what the Trooper learned from Currens's written statement, which was completed some time later. The timing will illuminate whether Currens had the opportunity to reflect about the accident before explaining what happened. *Ibid.*

Second, Currens's mental state. Fells said that Currens was not excited or under emotion's influence; yet he also said that Currens was in shock, saddened about Jones's death, calm but a bit nervous, and shaken up. Taken as a whole, this testimony was too murky to justify applying the exception. *Compare Bell*, 371 Ark. at 386-87, 266 S.W.3d at 706. It must be clarified on retrial for the circuit court to have a clear picture of Currens's mental state.

Third, spontaneity. The record contains no indication that Currens's statement was spontaneous. He may have volunteered his explanation to Trooper Fells without prompting. Or Currens may have been responding to pointed questions. The circuit court needed to know this foundational information. And the record should be clarified on this important aspect of the analysis too. *Bell*, 371 Ark. at 386-87, 266 S.W.3d at 706; *compare Rodriguez v. State*, 372 Ark. 335, 336-38, 276 S.W.3d 208, 210-11 (2008).

In sum, the circuit court needed both more information and clearer information to justify admitting Trooper Fells's hearsay testimony as an excited utterance. Ruling in the absence of this information was an abuse of discretion. Just as a court abuses its discretion by considering improper factors, failing to consider proper factors or important information likewise shows discretion abused. *Throneberry v. State*, 102 Ark. App. 17, 18, 279 S.W.3d 489, 490 (2008).

## III.

Currens and Littlejohn's fall-back position is that, even if error occurred here, it was harmless. We disagree for several reasons.

Unlike in *Luedemann*, for example, Trooper Fells's hearsay was not duplicated by the same or similar testimony from the declarant. 323 Ark. at 165, 913 S.W.2d at 775-76. Currens testified in Jones's case in chief about his employment. He did not testify, however, about the accident or what he had told Trooper Fells. Currens's counsel tried to cover this ground on cross-examination. Jones objected. The circuit court confined the cross to the scope of direct, and said that of course Currens could be recalled by the defense to tell his story. He was not recalled.

Currens and Littlejohn rely on *Gatlin v. State*, 320 Ark. 120, 895 S.W.2d 526 (1995), and two Eighth Circuit cases, for the proposition that Currens's testimony at trial eliminates any prejudice. Because Jones could have examined Currens about his statements to Trooper Fells, the argument goes, the hearsay error is harmless.

*Gatlin*, however, is distinguishable. First, the victim in that case testified about being raped on occasions other than the one described in the hearsay testimony. 320 Ark. at 125-26, 895 S.W.2d at 530. This was the first ground of the *Gatlin* court's harmless-error analysis, and it was sufficient to affirm on the point. *Ibid.* As a second ground, the court emphasized that, during the victim's testimony about the rapes, the defendant had the opportunity to cross-examine her about the challenged hearsay but "chose to forego his opportunity to pursue the issue . . . ." 320 Ark. at 126, 895 S.W.2d at 530. Here, Jones did not have the same kind of opportunity. Each party is the master of his case, and Jones had no obligation to examine Currens about his version of the accident in Jones's case in chief. If Currens had testified about his

statements to Trooper Fells at any time during the trial, and Jones had chosen to forego cross-examination, then *Gatlin* would control. In the circumstances presented, however, it does not.

As to the federal cases — exemplified by *U.S. v. Bohr*, 581 F.2d 1294 (8th Cir. 1978) — we, of course, are not bound by them. Whether the hearsay error here was harmless or prejudicial is a question of Arkansas law. Read narrowly, *Bohr* is like *Gatlin*: the declarant also testified about the subject matter of the challenged hearsay, and the appealing party opted not to cross-examine. *Bohr*, 581 F.2d at 1304. Read broadly, *Bohr* would stand for the proposition that, no matter the circumstances presented in the case as a whole, testimony by the declarant on any matter always cures any prejudice from challenged hearsay because the testimony opens the door for cross-examination on the hearsay. We are not persuaded that this kind of blanket rule is either correct or sound.

Finally, Currens and Littlejohn argue that the hearsay was harmless because it was cumulative. They point to the testimony of another witness, one Steven Ringo, who was driving behind Currens when the collision occurred. We conclude, however, that Trooper Fells's hearsay account of the accident from Currens did not duplicate Ringo's testimony. Ringo's evidence was all over the place. His statement at the scene echoed Currens's story: Jones was in Currens's lane. But Ringo later recanted, saying that he never actually saw Jones in the wrong lane and had assumed that fact. At trial, Ringo gave both versions of his story. He shifted back and forth, depending on which lawyer was asking the questions. The crisp and unchanging version of events according to Currens, as related by Trooper Fells, was not duplicated by Ringo.

Trooper Fells's testimony was singular. And it addressed the central disputed fact in the case — whether Jones ever entered Currens's lane. As the circuit court repeatedly and correctly recognized when dealing with the diagram, Fells's testimony carried particular weight because he is an Arkansas State Trooper. The court put it well: "Common sense tells you what kind of weight that the jury gives that." The court therefore refused to allow Trooper Fells to testify about his hearsay-based causation opinion that Jones was in the wrong lane and refused to admit the Trooper's unredacted diagram embodying this opinion. Currens's statement about how the accident happened, however, got a boost from the witness who delivered it. The jury heard the statement, not from Currens's mouth, but from the Trooper's. The speaker

makes a difference. This case must be retried because the hearsay error prejudiced Jones. *Turner*, 84 Ark. App. at 100-04, 133 S.W.3d at 421-23.

## IV.

Jones presses three other points for reversal. We do not reach two of them. He asserts error in the circuit court's refusal to grant a new trial based on newly discovered evidence: the results from a post-trial retest of Jones's blood, results which showed no cocaine. Our grant of a new trial moots this point. Jones also argues error, for various reasons, in the circuit court's admission of the initial drug test. We do not decide this issue because it will arise on retrial on a different record. The circuit court must revisit this issue in light of the record available at the new trial, including the retest of Jones's blood.

Jones also contends that the circuit court erred by allowing Currens and Littlejohn's accident-reconstruction expert "to opine that talking on a cell phone caused the wreck." Though the issue is close, we see no abuse of discretion. The expert reviewed witness statements, depositions, photographs, and took measurements at the scene. He concluded that Jones missed the curve. Jones objected to the expert's attempted use of cell phone records — which had been admitted without objection — to explain Jones's inattentiveness. The circuit court sustained the objection. On cross-examination by Jones, the expert stuck to his inattentiveness conclusion. He also testified that he made no assumption about whether Jones was on the phone or not at the time of the wreck. But, the expert said, the phone call may have caused inattention. Taking this exchange as a whole, we conclude that the circuit court did not abuse its discretion in limiting the expert's direct testimony about the cell phone records and allowing Jones to attack this issue on cross.

Reversed and remanded.

BIRD and BAKER, JJ., agree.