Cite as 2023 Ark. App. 129

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-22-598

| | |
|---|---|
| TERESA BAIRD<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered March 8, 2023<br><br>APPEAL FROM THE FRANKLIN COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 24OJV-22-3]<br><br>HONORABLE KEN D. COKER, JR., JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

**BART F. VIRDEN, Judge**

Teresa Baird appeals the Franklin County Circuit Court order terminating her parental rights to her six children.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i) (2019), Teresa's counsel has filed a motion to be relieved as counsel and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of our court sent copies of the brief and the motion to withdraw to Teresa, informing her of her right to file pro se points for reversal pursuant to Rule 6-9(i)(3), and Teresa has filed pro se

---

[1]Roy Baird's parental rights to MC2 were also terminated in this order; however, he is not a party to this case. Baird is not the father of Teresa's other five children.

points for reversal. We grant counsel's motion to withdraw and affirm the termination-of-parental-rights order.

## I. *Relevant History*

On January 24, 2022, the Arkansas Department of Human Services (the Department) filed a petition for dependency-neglect regarding MC1 (born 2009), MC2 (born 2010), MC3 (born 2016), MC4 (born 2017), MC5 (born 2020), and MC6 (born 2021). In the affidavit attached to the petition, the Department alleged that on January 19, a caseworker was assigned to investigate a report of bruises on MC5's cheeks, stomach, back (upper, middle, and lower areas), thighs, bottom, and arms. MC5 also had a bite mark on her right arm and a belt mark about six inches long on her thigh. It was learned that MC5 and her four older siblings were in foster care less than a year before for environmental neglect. That case was closed in June 2021, and the children were returned to Teresa's custody. MC5 and MC4 attended Stepping Stone day care, and the nurse there stated that they had to give MC5 a bath every day because she was so dirty. The nurse reported that both children had recurring head lice. MC4 had scratches on his face, neck, chest, back, and stomach as well as a deep bite mark on his back and left arm. He had bruises on his bottom and both arms. There were hairless patches on his head, and his skin was peeling in places. MC4 told the caseworker that "mama" scratched his face. MC3 told the caseworker that their mother spanked MC4 and MC5 with a paddle on their bottoms and spanked them other places on their bodies if they moved while being spanked. He said it had been a week since MC4 and MC5 were spanked, and the older children do not get spanked as often. Teresa denied

2

spanking the children. She stated that MC5 injured herself crawling out of her crib, and MC4 was injured when he fell and when the dog scratched him. When the caseworker walked through the home, she found it filthy and cluttered, with trash covering the floor in every room and old food and food wrappers everywhere. The kitchen counters and sink were covered in piles of dirty dishes. The beds were full of trash, stains, food, and dishes. There were no "paths" through the trash. The house smelled strongly of ammonia and contained "a minimum of ten cats" and no litter box. There were many roaches, and piles of trash littered the yard. A seventy-two-hour hold was taken on the children due to Teresa's violent behavior, the hazardous living conditions, and the young ages of the children. This was MC1 and MC2's fourth time in foster care, MC3's third time in foster care, MC4 and MC5's second time in foster care, and MC6's first time in foster care.

On January 26, the court entered a probable-cause order finding the six children dependent-neglected and that probable cause existed for the children to remain in foster care. The court ordered visitation and ordered Teresa to submit to drug screening, watch the video "The Clock is Ticking," attend parenting classes, maintain stable housing and employment, submit to counseling assessment, stay in contact with the Department, and resolve all criminal issues.

On February 24, the Department filed a petition for termination of parental rights against Teresa alleging that she had subjected the children to aggravated circumstances because there was little likelihood that further services would result in reunification. Specifically, the Department alleged that it had been involved with the family since August

2014, and despite several rounds of intensive services, there had been no improvement. The Department also alleged that termination was in the children's best interest because they are adoptable, and they would be subject to potential harm if placed with Teresa. On March 9, the court adjudicated the children dependent-neglected due to abuse, abuse of a sibling, neglect, and parental unfitness.

At the May 25 termination hearing, documentary evidence—including orders from previous cases involving the family—was introduced. Department caseworker Cheryl Warden testified that the first true finding of neglect was in August 2014 due to failure to protect. Teresa was offered and completed parenting classes in that case, and the children were returned to her custody. In August 2016, another case was opened on the family. The third case was opened in November 2016, though the children were not removed from the home. A true finding for environmental neglect and inadequate supervision was made, and eventually the case was closed. The fourth case was opened in December 2016 for inadequate shelter. In August 2020, another case was opened for environmental neglect. In that case, Teresa completed parenting classes, safe care in-home parenting services, intensive family services, and a psychological evaluation. The family was reunified, and the case was closed in June 2021. The instant case was opened seven months later for environmental neglect and abuse. Warden described the supervised visitation as "very chaotic." She stated that Teresa did not interact well with the children and that she "calls on [MC1 and MC2] to make—to reprimand the other children." Warden testified that in the case before this one, the Department obtained a dumpster for Teresa, and she cleaned quite a bit, inside and outside

4

the home; however, on the day they removed the children from the home this time, "there was already trash piled up" outside. The living room was a maze of plastic tote sacks, the furnace was uncovered and a burn hazard, the kitchen was piled up again, and the roaches were back.[2] The only unblocked exit was the front door, and the children's rooms were again covered in food and food wrappers, and other filth was everywhere. Electronic equipment was stored in the baby's bed. MC4 and MC5 had bruises, scratches, and bite marks all over their bodies. Nicholas Steelman, the current caseworker for the family, testified that Teresa was offered parenting classes, which she completed; she was participating in counseling; and she was in compliance with the case plan. He explained that Teresa had moved from the home she had been living in with the children and into a new home, which was a little cluttered but safe. Teresa was employed. He explained that the Department divided up the children for separate or small-group visitations, and there was also visitation with all the children together. Steelman stated that Teresa had attended all visitations, and when the visitation involved one or two children, it went well. Steelman testified that the visitation room was about the size of a typical bedroom, and the visitations with all six children were chaotic and very loud. Typically, he explained, Teresa sits on the floor, and the children come to her. The children who are not getting her attention tend to cry, so there is always someone crying. He stated that he had not seen Teresa use any parenting skills she might have learned in classes. Steelman stated that if a child is hurt or upset, "they run to the

---

[2]In a prior case, one of the children had badly burned himself on the furnace, and Teresa had been told to cover it, which she did.

siblings for—to be consoled instead of to mom." He testified that MC1 and MC2 were placed with their teacher, MC3 and MC4 were placed in two separate foster homes, and MC5 and MC6 were placed together in another home. Steelman testified that it was difficult to get four or more children placed together. All in all, the children were doing well in their foster homes. Steelman testified that the Department recommended termination because there were concerns that Teresa would fall back into her old habits, and the children would not be safe. The foster parents of MC5, MC6, and MC3 were interested in adoption, and there were two families in the state interested in adopting a sibling group of five to six. He stated that all the children are adoptable.

Teresa testified that she would be upset if her parental rights were terminated, in part because she would have to move to a smaller home. She testified that she was employed, she was keeping the home clean, and she had gotten rid of all the cats except for the mother cat and her kittens. Teresa explained that she was waiting for the kittens to be weaned, and then the mother cat would go outside and the kittens to other homes. She stated that she sat on the floor during visitation because the room was small, and it was chaotic with six children. Teresa explained that she disciplined and interacted with the children the way she had learned in her parenting class. Teresa stated that the family service workers would not give her a chance to redirect the children and would "automatically come in there." Teresa recalled that she may have completed parenting classes three separate times, beginning five or six years before. She explained that she believed this kept happening because "people hate me . . . that's the only thing I can think of is that I wouldn't do something for somebody,

6

and Roy Baird had made threats to me of calling them." She stated that the children got head lice from school.

At the conclusion of the evidence, the circuit court orally granted the Department's petition, finding that the Department had proved the aggravated-circumstances ground by clear and convincing evidence and that termination was in the children's best interest. Specifically, the court recounted the family's long history with the Department and Teresa's failure to demonstrate the ability to maintain a safe environment despite multiple rounds of services. The court noted Teresa's near perfect compliance with the case plan and her love for her children but found that the services had not been successful in teaching her to safely parent her children.

On July 11, the court entered a written order terminating Teresa's parental rights, finding that she had subjected her children to aggravated circumstances, and there was little likelihood that further services would result in reunification "due to the repeated failure of services to have a lasting effect[.]" Specifically, the court found that since 2014, the family had received services to address inadequate supervision, inadequate shelter, and environmental neglect. The court found that the children were subjected to physical abuse, and there were ten cats living in the home, which was covered in trash, old food, clothing, food wrappers, and detritus. The circuit court further found that termination of Teresa's parental rights was in the children's best interest, finding that they are adoptable, have no particular behavioral or medical issues, and had adjusted well in the current placements. Regarding potential harm, the circuit court found that the children would be subjected to

potential harm "because of the repeated cycle of unsafe parenting as shown by multiple occasions upon which the juveniles were removed from the home due to the parents placing them in immediate danger." The court recounted the children's multiple foster-care placements and the family history with the Department and found that "the parents are incapable of dealing with the root cause of the problem which continuously causes their children to experience the trauma of being removed from their home." The court noted that three of the children were under the age of four, and Teresa was incapable of safely caring for six children, despite repeated services.

Teresa timely filed her notice of appeal, and she has filed pro se points for reversal. Her attorney has filed a motion to withdraw along with a no-merit brief contending that there is no arguable merit for appeal.

## II. *Standard of Review*

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a

finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). Potential harm must be viewed in a forward-looking manner and in broad terms. *Dowdy v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. The court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v.*

*Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.* Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*

### III. *Termination*

In dependency-neglect cases, if after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. Ark. Sup. Ct. R. 6-9(i)(1).

One of the adverse rulings in this case is the circuit court's termination decision. In counsel's no-merit brief, counsel correctly asserts that there can be no meritorious challenge to the sufficiency of the evidence supporting the termination of Teresa's parental rights. The circuit court found one statutory ground for termination, and only one ground is necessary to support the termination. *See Campbell v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 82. The circuit court found that Teresa had subjected her children to aggravated circumstances. Aggravated circumstances, as applied to the case at bar, is defined as a determination made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*. Teresa's counsel explains that there is little likelihood that services to her will result in successful reunification because the evidence demonstrates that she has had several rounds of intensive family services and cannot resolve the recurring issues. We agree. Beginning in 2014, Teresa consistently failed to demonstrate that she could provide a stable, safe home for her children, resulting in the

children's removal and return numerous times. A parent's continued inability to protect and care for her child and failure to benefit from the services provided demonstrate little likelihood that further services will result in a successful reunification. *Jones v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 299, at 8, 578 S.W.3d 312, 317–18. In light of the evidence, we hold that there is no merit to the appeal of the circuit court's finding that there was little likelihood that services to Teresa would result in successful reunification.

Teresa's counsel further asserts that there can be no meritorious challenge to the circuit court's finding that termination was in the children's best interest, and we agree. Caseworker Steelman testified that the children are adoptable, and three of the children's foster parents are interested in adopting them. Moreover, there was testimony regarding the possibility that the sibling group could be adopted together. This testimony is sufficient evidence for adoptability under our court's caselaw. *See Cobbs v. Ark. Dep't of Hum. Servs.*, 87 Ark. App. 188, 199, 189 S.W.3d 487, 493 (2004).

Teresa's counsel also explains why returning the children to her custody would subject them to potential harm. As found by the court and demonstrated by the evidence, Teresa's children would be at risk of harm because she has not demonstrated the ability to provide a safe environment and appropriately parent the children despite having participated in Department services since 2014, attempting to address the same issues.

On this record, the circuit court's finding that termination of Teresa's parental rights was in the children's best interest was not clearly erroneous.

IV. *Other Adverse Rulings*

11

Counsel correctly asserts that there was one other ruling adverse to Teresa. Counsel objected to the introduction of orders from the record of an earlier closed case, arguing that "[t]hose aren't a part of this case." The court overruled the objection, and the orders were admitted. The admission of evidence is at the discretion of the circuit court, and we will not reverse absent an abuse of that discretion and a showing of prejudice. *Turner v. Nw. Ark. Neurosurgery Clinic, P.A.*, 84 Ark. App. 93, 133 S.W.3d 417 (2003). Pursuant to Rule 401 of the Arkansas Rules of Evidence, "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. To be relevant, evidence need not conclusively establish the fact of consequence; all it must do, when considered in the entire context of the trial, is make the proposition for which it is offered more or less probable than it would be without it. *Yeakley v. Doss*, 370 Ark. 122, 257 S.W.3d 895 (2007). Counsel correctly explains that the family's previous contact with the Department and the progress outcome of earlier cases are highly relevant. A parent's past behavior is often a good indicator of future behavior. *Holt v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 170, 597 S.W.3d 142. Moreover, Teresa cannot show prejudice from the admission of the orders because the orders demonstrate that she was able to regain custody of her children. We agree with counsel that there would be no merit in arguing that the circuit court abused its discretion in permitting the admission of the orders from the family's earlier cases.

V. *Teresa's Pro Se Points*

12

In her pro se points, Teresa argues that (1) the court erroneously admitted the orders from the closed cases; (2) Cheryl Warden did not like her and "had it out for" her and "threw important documents out of her car and in my driveway"; (3) she had photographic evidence that her home was clean and was only dirty when she was in the process of moving; (4) her two-year-old daughter had a large, unexplained bruise on her leg that she claims was done by the foster parent; and (5) the Department "lied in all of these statements." Argument (1) is addressed above and, as discussed, is without merit. Counsel, the attorney ad litem, and the Department correctly assert that arguments (2), (4), and (5) are new arguments and cannot be made for the first time on appeal. *See Mercado v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 495, at 5. Regarding argument (3), that the home was only dirty during the upheaval of moving, there was testimony at the hearing regarding the environmental condition of the home, and we will not reweigh the evidence on appeal or second-guess the court's credibility determinations. *Blasingame v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 71, at 6, 542 S.W.3d 873, 877.

We hold that Teresa's counsel has adequately addressed the adverse rulings in this case and has complied with both the court rules and the *Linker-Flores* requirements for no-merit briefs. Accordingly, we affirm the circuit court's termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

HIXSON and MURPHY, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Demarcus D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.